Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

SARASOTA CONCRETE COMPANY and Occupational Safety and Health Review Commission, Respondents.

No. 81–5621.

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1982.

Charles I. Hadden, Asst. Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., Edward G. Hoban, Earl R. Ohman, Jr., Sect. OSHRC, Washington, D.C., for petitioner.

Fisher & Phillips, Michael C. Towers, Atlanta, Ga., James E. Holmes, Tampa, Fla., for Sarasota Concrete Co.

Before HILL and CLARK, Circuit Judges, and SCOTT *, District Judge.

JAMES C. HILL, Circuit Judge:

The Secretary of Labor brings this petition to review an order of the Occupational Safety and Health Review Commission

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by designation.

("OSHRC" or "Commission") vacating a citation issued against Sarasota Concrete Company. The Commission ruled that the evidence supporting the citation was obtained as a result of an unconstitutional search of the company's workplace. In granting Sarasota's suppression motion, the Commission concluded that a magistrate's warrant, authorizing a full scope inspection of the company on the basis of a very specific employee complaint, was not supported by sufficient probable cause.[1] Lacking evidentiary support, the citation necessarily was vacated.

To evaluate the Commission's order properly, we must address four questions relating to the parameters of an employer's rights under the fourth amendment.

1. Whether OSHRC may evaluate the probable cause determination of a federal magistrate when determining whether to admit evidence in an administrative hearing.

2. Whether a specific employee complaint is insufficient probable cause to support a full scope inspection of a commercial workplace.

3. Whether OSHRC may apply an exclusionary rule.

4. Whether OSHRC may refuse to apply a good faith exception to its exclusionary rule.

For the reasons set forth below, we answer each of the questions in the affirmative and uphold the Commission's order.

1. In *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court ruled that the Occupational Health and Safety Act, 29 U.S.C. §§ 651 et seq. violated the constitutional prohibition against unreasonable searches insofar as it purported to authorize warrantless nonconsensual searches of commercial workplaces. As a result, OSHA inspections generally must be conducted pursuant to a warrant. The only major exception to the warrant requirement is when the inspection is of a licensed or closely regulated business or industry. 436 U.S. at 313, 98 S.Ct. at 1820–1821; *e.g., United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

2. The pertinent provision of the magistrate's warrant reads as follows:

## I. FACTS AND PROCEEDINGS

On March 8, 1978, Samual Storey was discharged from his position with Sarasota Concrete Co. ("Sarasota"). Six days later he filed a complaint with OSHA's Tampa area office. Storey alleged that the company's cement-mixer transit trucks were maintained improperly and suffered defects such as worn tires, faulty springs and lights, and erratic brakes and steering. When filing his complaint, Storey failed to indicate that he no longer was employed by the company.

Responding to the complaint, an OSHA compliance officer went to Sarasota's work area and requested permission to conduct an administrative inspection. He was informed, however, that the company maintained a policy against warrantless inspections and was denied admission.

More than six months later, on October 6, 1978, OSHA applied to a federal magistrate for an administrative inspection warrant authorizing an investigation of Sarasota's entire workplace. OSHA made its request solely on the basis of Storey's complaint. The complaint was attached to the application, and the application alleged that OSHA had reasonable grounds to believe the alleged violations existed. After determining that administrative probable cause had been shown, the magistrate granted the warrant as requested.[2] Four days later an

Application having been made, and administrative probable cause having been shown in the application filed herein,

IT HEREBY IS ORDERED that the above-named addressees are authorized to conduct an inspection and investigation pursuant to § 8 of the Occupational Safety and Health Act, 29 U.S.C. § 651, *et seq.* (the Act), of the subject employer at its workplace located as aforesaid, where it is engaged in the ready-mix concrete business. The addressees are authorized to enter upon the said workplace during regular working hours or at other reasonable times, after showing appropriate credentials, and to inspect and investigate within reasonable limits and in a reasonable manner (including but not limited to testing, the taking of photographs, samples, measurements, and to question privately any employer, owner, operator, agent, or employee of

OSHA compliance officer served Sarasota's plant manager with a copy of the warrant and conducted a full scope investigation. As a result of the investigation, OSHA cited Sarasota for twelve "non-serious" violations of standard regulations or sections of the Occupational Health and Safety Act. None of the violations, however, related to Sarasota's cement-mixer trucks.

■ Although no penalty attached to any of the alleged violations, Sarasota contested each charge, and the matter was set for a hearing before an Administrative Law Judge (ALJ). At the onset of the hearing, Sarasota filed a motion to suppress all evidence gathered during the investigation which was beyond the scope of Storey's complaint.[3] In essence, Sarasota maintained that Storey's complaint about the cement-mixer trucks was not sufficient probable cause to support a search of the company's entire workplace. The ALJ agreed, granted the motion to suppress, and accordingly vacated the citation.[4]

Upon a petition for discretionary review by the Secretary of Labor, the Occupational Safety and Health Review Commission affirmed the decision of the ALJ. Relying on *Chromalloy American Corp.,* 7 OSHRC (BNA) 1547 (No. 77–2788, 1979), and *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128 (3d Cir.1979), the Commission concluded that it was competent to determine the constitutionality of an OSHA inspection by looking to the evidence presented to the magistrate when the warrant was sought. It ruled further that if the evidence failed to support a finding of administrative probable cause, then the evidence would not be admitted in the administrative hearing. Although the Commission applied an exclusionary rule, it refused to adopt a good faith exception to the rule. Instead, the Commission held that when an employee complaint forms the basis of an administrative inspection, "an inspection beyond the scope of the alleged violation is not permissible where the Secretary can determine the precise location of the alleged violation." Because Storey's complaint was restricted to a discrete area of Sarasota's facility, the Secretary's inspection of the entire work-

---

the establishment), the workplace or environment where work is performed by employees at the workplace and all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including but not limited to records, files and papers required to be maintained by the employer pursuant to the Act and the regulations thereunder; processes; controls; and facilities) bearing on whether the employer at its workplace is furnishing to its employees employment and a place of employment that are free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, and whether the employer is complying with safety and health standards promulgated under the Act and rules, regulations, and orders issued pursuant to the Act.

3. Initially, Sarasota moved to quash the warrant and to suppress the evidence in federal district court. The district court, however, deferred ruling on the motion to permit an administrative determination of the warrant's validity. Subsequently, it has been held that challenges to an executed administrative warrant must first pass through the administrative process. *Baldwin Metals Co. v. Donovan,* 642 F.2d 768 (5th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981).

4. For purposes of these proceedings, and those at the administrative level, the following stipulation was agreed to by the parties:

Corrective action was taken by Sarasota Concrete for each of the standards allegedly violated and notification of the corrections served on the Occupational Safety & Health Administration, Tampa Area Office.

OSHRC Decision at 4. Because of this stipulation, a question was raised at oral argument whether the corrective measures of Sarasota rendered this case moot. The Secretary, however, persuasively responded that despite the stipulation, the parties have no binding abatement order. Nor is there any agreement as to how abatement is to be enforced. Moreover, Sarasota faces the possibility of repeated citations for which, according to the Secretary, it could incur stiffer penalties because of these prior violations. *See* 29 U.S.C. § 666(a). Finally, the Secretary contends that the question of Commission review is capable of repetition yet would evade review whenever a company takes corrective measures after the Secretary has filed a petition for review. We agree and hold that the controversy is not mooted by the stipulation of corrective action. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712–713, 35 L.Ed.2d 147 (1973); *Marshall v. OSHRC,* 635 F.2d 544, 548 (6th Cir.1980).

place violated the fourth amendment.[5] Accordingly, the evidence pursuant to the unconstitutional search was suppressed by the Commission. From this decision, the Secretary filed a timely notice of appeal.

## II. SCOPE OF REVIEW

The threshold issue is whether the Commission is competent to evaluate the sufficiency of the evidence supporting the magistrate's determination of probable cause. According to the Secretary, such review by OSHRC violates the concept of separation of powers by allowing an executive agency to review a judicial determination. The Commission, however, maintains that by reviewing the grounds for probable cause, it does not seek to overturn the magistrate's issuance of the warrant; rather, it merely seeks to determine whether the evidence is admissible for the purpose of the administration hearing. This issue is one of first impression in this circuit, and one that the court expressly refused to reach in *Baldwin Metals Co. v. Donovan,* 642 F.2d 768, 773–74 n. 11 (5th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981).[6] Yet we do not write on a clean slate. We are guided not only by the general principles articulated in *Baldwin* and the decisions of other circuits, but also by the principles and policies that underlie the constitutional requirement of a warrant for administrative searches.

*Baldwin* held that an employer must exhaust its administrative remedies before asking a court to declare an administrative warrant unconstitutional. To reach this conclusion the court reasoned,

An OSHRC decision favorable to Baldwin or Mosher would moot constitutional issues and make judicial intervention unnecessary. In addition, requiring exhaustion of remedies serves to protect the autonomy of OSHRC proceedings. Moreover, since judicial review of the allegedly unconstitutional warrants is provided in the appellate review of OSHRC decisions by a federal circuit court of appeals, no irreparable injury is suffered. Based upon the above analysis and upon the Third Circuit's thoughtful opinion in *Babcock & Wilcox, supra,* we hold that judicial review of the administrative warrants in these cases should be postponed until Baldwin and Mosher have exhausted their administrative remedies.

642 F.2d at 775.[7] The Secretary argues that in requiring administrative exhaustion, the court anticipated that OSHRC would defer constitutional considerations and decide only the merits of the claim. Had the court premised its exhaustion requirement solely on the ability of OSHRC to moot constitutional issues, the Secretary's point may have been well taken. However, the two additional considerations enunciated to support the exhaustion requirement offer equally persuasive support for allowing OSHRC to review a magistrate's determination of probable cause: the preservation of administrative autonomy and the assurance of judicial review by a federal appellate court. In addition, the court's favorable reference to *Babcock & Wilcox v. Marshall,* 610 F.2d 1128 (3d Cir.1979), which

---

5. Sarasota also alleged that, as a former employee, Storey did not have standing to file a complaint and that the Secretary's six month delay in applying for the warrant rendered the complaint stale and insufficient probable cause. Both arguments were rejected by the Commission.

6. As a former Fifth Circuit case decided prior to October 1, 1981, *Baldwin* is the law in this court. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

7. Both defendant companies in *Baldwin* went straight to federal district court and obtained preliminary injunctions, arguing that the OSHA warrants issued by the magistrate were unconstitutional. 642 F.2d at 771. On appeal, however, the preliminary injunctions were dismissed and the companies were directed to exhaust their administrative remedies before seeking relief in federal court. *Id.* at 777. In this manner, the appellate court was able to avoid addressing the issue of whether the Commission is competent to review a magistrate's decision to issue a warrant. Sarasota, on the other hand, has exhausted its administrative remedies, and, in the course of those proceedings, the Commission reviewed the magistrate's issuance of the warrant. Thus, we must address the question left unanswered in *Baldwin.*

o

favored OSHRC review of probable cause determinations, lends further support for Sarasota's position that the Court anticipated judicial review would come from the federal courts of appeals.

■ The Commission's review of a magistrate's determination of probable cause is akin to the formulation of a rule of evidence. Clearly "[t]he Commission is authorized to make such rules as are necessary for the orderly transaction of its proceedings." 29 U.S.C. § 661(f). In the interest of maintaining their autonomy, administrative agencies are not restricted to rigid rules of evidence. *FTC v. Cement Institute,* 333 U.S. 683, 705–06, 68 S.Ct. 793, 805–806, 92 L.Ed. 1010 (1948). An administrative body even may exclude evidence otherwise admissible under federal rules. *See Carpenter Sprinkler Corp. v. NLRB,* 605 F.2d 60, 66 (2d Cir.1979). We therefore see no reason why OSHRC should be restricted from reviewing the magistrate's determination of probable cause to evaluate whether the evidence meets the standards of admissibility for an OSHRC proceeding. Indeed, to prohibit such review would be to allow the magistrate to control admissibility determinations in contravention of administrative autonomy.

On the other hand, review by OSHRC does not directly affect the substance of the magistrate's determination. As explained by the Third Circuit in *Babcock & Wilcox Co.,*

> The Article III objections stressed by Babcock similarly mischaracterize the process. The Review Commission will not sit in direct review of the decision of the magistrate. As already indicated, the decision to issue the inspection warrant is complete and cannot be negated. If the challenge is raised by Babcock, the problem for the Review Commission will be whether to use the evidence obtained from the inspection. In deciding whether to use this evidence the Review Commission must of course, make its own judgment as to the propriety of the warrant, but such a determination does not reverse the magistrate's action, nor does it con-

> travene a judicial order. The OSHA official would not be in contempt if he were to decide not to execute a warrant signed by the magistrate, and an administrative tribunal does not flout the authority of the judiciary by refusing to consider evidence that has been obtained pursuant to a warrant issued by a judge or magistrate.

610 F.2d at 1136 (footnotes omitted) (quoted in *Baldwin,* 642 F.2d at 773–74 n. 11). Upon its issuance, the ability to quash a warrant or to enforce a warrant through contempt proceedings remains with the federal district court. *See, e.g., Donovan v. Blue Ridge Pressure Castings, Inc.,* 543 F.Supp. 53 (M.D.Pa.1981); *In re Establishment Inspection of Federal Clearing Die Casting Co.,* 484 F.Supp. 215 (N.D.Ill.1980); *Marshall v. Huffines Steel Co.,* 478 F.Supp. 986 (N.D.Tex.1979). Any action by OSHRC, in contrast, pertains only to the citation involved in statutory enforcement proceedings. *See In re Worksite Inspection of Quality Products, Inc.,* 592 F.2d 611, 615 (1st Cir.1979). In addition, an OSHRC determination is not the final word. Any decision by OSHRC is subject to review by a federal court of appeals. 29 U.S.C. § 660(a). No party, therefore, is denied review of its constitutional claims by an Article III court. The only issue is whether by-passing the district court results in any serious ramifications.

■ Under the Magistrates Act, a district court retains general supervisory power to review any action taken by a federal magistrate. *See generally* 28 U.S.C. § 636. This is because the magistrates themselves are not Article III judges. Magistrates are allowed to perform "inherently judicial" acts only because they act under the supervision of an Article III judge. *See United States v. Raddatz,* 447 U.S. 667, 681–84, 100 S.Ct. 2406, 2415–2416, 65 L.Ed.2d 424 (1980); *Mathews v. Weber,* 423 U.S. 261, 266–72, 96 S.Ct. 549, 552–555, 46 L.Ed.2d 483 (1976); *see, e.g., United States v. De la Torre,* 605 F.2d 154 (5th Cir.1979). Decisions by a magistrate pursuant to 28 U.S.C. § 636(b) are not final orders and may not be appealed until rendered final by a dis-

trict court. *Glover v. Alabama Board of Corrections,* 660 F.2d 120, 122 (5th Cir.1981) (Unit B).

The principal consideration prompting the requirement of formal judicial review, and indeed the concept underlying the establishment of an Article III judiciary, is the desire to insulate judicial acts from executive and legislative coercion. *Id.* at 124 (citing *O'Donoghue v. United States,* 289 U.S. 516, 531, 53 S.Ct. 740, 743, 77 L.Ed. 1356 (1933).). Therefore, the proper method to ensure that a magistrate's determination remains untainted by such coercion is review by an Article III court. Clearly a court of appeals, which is composed of Article III judges, is competent to serve this function. As noted in the context of the administrative exhaustion issue, "No injury to defendants can occur, since review of the OSHRC decision will be heard by the same court of appeals which would have reviewed a district court's decision concerning the constitutionality of a warrant." *Baldwin,* 642 F.2d at 773 (citing *Babcock & Wilcox,* 610 F.2d at 1140.). It also is significant that the courts of appeals will serve in this direct review capacity only insofar as the probable cause determination relates to the administrative citation. Most administrative appeals by-pass district courts.

Moreover, by-passing the district court does not impinge upon the function or purposes of a magistrate-issued warrant. OSHRC may not issue its own warrants. Instead, OSHRC review comes after the goals of the warrant requirements have been satisfied. In the criminal context, the warrant requirement seeks to interpose an orderly procedure whereby a neutral and detached magistrate can make an informed and deliberate determination. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). *See generally* 2 W. La Fave, *Search & Seizure* § 4.2 (1978). Administrative warrants serve similar functions, but are primarily intended to limit the discretion of administrative officials. *See Michigan v. Tyler,* 436 U.S. 499, 507–08, 98 S.Ct. 1942, 1948–1949, 56 L.Ed.2d 486 (1978); *Ca-*

*mara v. Municipal Court,* 387 U.S. 523, 532, 87 S.Ct. 1727, 1732–1733, 18 L.Ed.2d 930 (1967). Thus, in the context of an OSHA search,

"[a] warrant ... would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed.

*Marshall v. Barlow's Inc.,* 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305 (1978) (footnotes omitted). These functions are necessary and remain unimpeded by a subsequent OSHRC review.

■ Finally, we note that all three branches of government are bound to uphold the Constitution in the exercise of their duties. *See generally* 5 U.S.C. § 3331 (oath of office). Indeed, the development of the exclusionary rule as a device to put some "teeth" into the fourth amendment was the judiciary's response to inaction by the Congress. Chief Justice Burger has consistently implored Congress to legislate an enforcement mechanism, suggesting that the exclusionary sanction be abolished. *See, e.g., Bivins v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 421–23, 91 S.Ct. 1999, 2017–2018, 29 L.Ed.2d 619 (1971) (Burger, C.J., dissenting). Here, an executive agency is undertaking this enforcement function. OSHRC perceived that Sarasota's constitutional rights had been violated. Thus the Commission refused to allow such a constitutional infringement to form the basis of its action against the company. OSHRC's decision really had very little to do with the magistrate's warrant. The warrant only authorized access to Sarasota's workplace. It did not order OSHA officials to execute the search. Nor did it mandate that OSHRC admit the evidence. We therefore hold that OSHRC may determine if sufficient probable cause supported an administrative warrant when the evidence obtained pursuant to the warrant form the basis of the agency's proceedings.

### III. PROBABLE CAUSE

Having ruled that the Commission did not exceed the scope of its authority in evaluating the magistrate's probable cause determination, we turn now to its decision that the authorization of a full scope inspection was not supported by probable cause. More specifically, we must determine whether Storey's complaint about Sarasota's trucks was probable cause to inspect Sarasota's entire workplace.

■ The Occupational Health & Safety Act authorizes two types of inspections which, after *Barlow's* must be conducted pursuant to a warrant. An inspection under section 8(a) may be conducted in accordance with a general administrative plan. 29 U.S.C. § 657(a). An inspection under section 8(f), on the other hand, may be conducted as a result of an employee complaint. 29 U.S.C. § 657(f).[8] Probable cause for an administrative warrant therefore may consist of either a showing that the inspection is pursuant to reasonable administrative standards or specific evidence of an existing violation. *Barlow's,* 436 U.S. at 320–21, 98 S.Ct. at 1824–1825.

■ In evaluating probable cause, when an inspection is pursuant to an administrative plan, the principal concern is that the plan be neutral. *Id.* at 321, 98 S.Ct. at 1825. When, however, an inspection is pursuant to an employee complaint, as in the present case, a more individualized inquiry is required. *See Michigan v. Tyler,* 436 U.S. 499, 507, 98 S.Ct. 1942, 1948–1949, 56 L.Ed.2d 486 (1978). This distinction is drawn because employee complaints lack the administrative and legislative guidelines that ensure that the target of the search was not chosen for the purpose of harassment. *See id.; Marshall v. Horn Seed Co.,* 647 F.2d 96, 101 (10th Cir.1981); *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1327–28 (7th Cir.1980) (Wood, J., dissenting). Because of this increased danger of abuse of discretion and intrusiveness,[9] we join those courts that have recognized that a complaint inspection must bear an appropriate relationship to the violation alleged in the complaint. *E.g., Horn Seed Co., supra; Marshall v. North American Car Co.,* 626 F.2d 320, 324 (3d Cir.1980); *Marshall v. Central Mine Equipment Co.,* 608 F.2d 719, 720–21 n. 1 (8th

**8.** OSHA's inspection of Sarasota was pursuant to section 8(f) of the Act which provides:

(1) Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of the inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such a violation or danger exists. If the Secretary determines that there are no reasonable grounds to believe that a violation or

danger exists he shall notify the employees or representative of the employees in writing of such determination.

(2) Prior to or during any inspection of a workplace, any employees or representative of employees employed in such workplace may notify the Secretary or any representative of the Secretary responsible for conducting the inspection, in writing, of any violation of this Chapter which they have reason to believe exists in such workplace. The Secretary shall, by regulation, establish procedures for informal review of any refusal by a representative of the Secretary to issue a citation with respect to any such alleged violation and shall furnish the employees or representative of employees requesting such review a written statement of the reasons for the Secretary's final disposition of the case.

29 U.S.C. § 657(f).

**9.** The intrusiveness of a full scope inspection is not insignificant. They often extend over a period of weeks. *See, e.g., Cerro Metal Products v. Marshall,* 620 F.2d 964, 974 n. 27 (3d Cir.1980) (six weeks). Moreover, they create a disruption, inconvenience, and lost employee time. *Id.* at 974.

Cir.1979); *In re Establishment Inspection of Asarco, Inc.,* 508 F.Supp. 350, 353 (N.D. Tex.1981); *West Point-Pepperell, Inc. v. Marshall,* 496 F.Supp. 1178, 1186 (N.D.Ga. 1980), *rev'd on other grounds,* 689 F.2d 950 (11th Cir.1982); *Marshall v. Pool Offshore Co.,* 467 F.Supp. 978, 981–82 (W.D.La. 1979).[10] In reaching this conclusion, we do not maintain that a specific complaint may never form the basis of a full scope inspection. Rather, we conclude that when *nothing more* is offered than a specific complaint relating to a localized condition, probable cause exists for a search to determine only whether the complaint is valid. Under other circumstances, it is conceivable that a specific violation plus a past pattern of violations may be probable cause for a full scope inspection. In addition, a specific complaint may allege a violation which permeates the workplace so that a full scope inspection is reasonably related to the complaint.

Nevertheless, a number of courts have suggested that a specific employee complaint automatically supports inspection of a company's entire workplace. *E.g., Hern Iron Works, Inc. v. Donovan,* 670 F.2d 838 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982); *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313 (7th Cir.1980); *In re Establishment Inspection of Seaward International, Inc. v. Marshall,* 510 F.Supp. 314 (W.D.Va.1980), *aff'd,* 644 F.2d 880 (4th Cir. 1981) (without opinion). To the extent that

these courts hold that an inspection need not bear a reasonable relationship to the alleged violation, we reject their conclusion. We note, however, that in *Burkart Randall* only one judge reached this conclusion.[11] In addition, *Hern Iron Works* and *Seaward International* can be distinguished on a factual basis. In both cases, the magistrate could have inferred that the alleged hazard permeated the entire workplace. For example, in *Hern Iron Works,* the violation pertained to the company's ventilation system. Thus, the court concluded, "The magistrate could reasonably have inferred that inspection of the entire Hern establishment was necessary to detect ventilation hazards." 670 F.2d at 841. Similarly, in *Seaward International,* the employee complaint pertained to exposure levels of known or suspected carcinogens. 510 F.Supp. at 315 n.1. Again the alleged violation could have been expected to infect the entire workplace.

In contrast, Storey's complaint dealt solely with the improper maintenance of Sarasota's cement-mixer transit trucks. The nature of the alleged violation was restricted to a particular location. Although the complaint represented sufficient probable cause to inspect Sarasota's trucks and any area of the workplace reasonably related to the complaint, a full scope investigation of unrelated areas was not justified. "Reasonableness" remains the ultimate standard in evaluating the propriety of an administra-

**10.** The Secretary goes to great lengths to demonstrate that inspections under section 8(f) were designed solely to protect employee rights by assuring prompt and mandatory inspections upon the filing of an employee complaint. He also points to OSHA regulation 29 C.F.R. § 1903.11(b) which directs that inspections pursuant to an employee complaint "shall not be limited to matters referred to in the complaint." In this manner, the Secretary argues that the requirements of section 8(f) are satisfied without requiring that the subsequent search be related to the employee complaint. Although we do not dispute that section 8(f) provides a mechanism designed to protect employee rights, *Barlow's* mandates that those rights be balanced against an employer's rights under the fourth amendment. The statutory requirements of section 8(f) may not be inter-

preted so as to contravene fourth amendment protections recognized in *Barlow's.*

**11.** Only Judge Sprecher concluded that a specific complaint "absent extra-ordinary circumstances" could support a full scope inspection. 625 F.2d 1324 (Sprecher, J.). Chief Judge Fairchild agreed with the dissent's treatment of the issue but concurred in Judge Sprecher's result because "the location and types of hazards named in the employee complaints seem to be sufficiently diffuse to sustain the magistrate's determination that a search of the entire workplace was reasonable." 625 F.2d 1326 (Fairchild, C.J., concurring). Judge Wood vigorously dissented, arguing that the warrant was issued upon no reasonable likelihood that violations existed throughout the facility. *Id.* at 1327–28 (Wood, J., dissenting).

tive search. *Camara,* 387 U.S. at 539, 87 S.Ct. at 1736. Thus, we are required to weigh the danger of abuse and intrusiveness against the need for the inspection. We also consider only the evidence before the magistrate at the time of application for the administrative warrant. *West Point Pepperell, Inc. v. Donovan,* 689 F.2d 950, 958 (11th Cir.1982); *see, e.g., Burkart Randall,* 625 F.2d at 1319; *Blue Ridge Pressure Castings,* 543 F.Supp. at 58. *Cf. Spinelli v. United States,* 393 U.S. 410, 413 n. 3, 89 S.Ct. 584, 587 n. 3, 21 L.Ed.2d 637 (1969) (criminal context); *Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964) (criminal context).

The magistrate issued a full scope investigation solely on the basis of a specific complaint. The intrusiveness of the inspection was total. More importantly, the danger of abuse was great. As a recently discharged employee, Storey very well may have been motivated by revenge. In another setting, he may have been a competitor attempting somehow to damage Sarasota. Of course such speculation is in no way dispositive. Nor does it reflect on the probable cause to believe that the alleged truck violations existed. Our point simply is to illustrate the potential abuses of complaint searches as opposed to those governed by neutral administrative guidelines. Neither OSHA nor the magistrate had any reason to believe that violations existed throughout Sarasota's workplace, and the search had none of the safeguards provided by neutral administrative standards. We therefore conclude that the scope of the inspection (the degree of intrusiveness) was not supported by probable cause and was thus unreasonable.

### IV. EXCLUSIONARY RULE

On appeal, the Secretary does not seriously contest the application of an exclusionary rule in OSHA proceedings when a constitutional violation has been found. Instead, he argues that even if a technical violation has occurred, the compliance office acted pursuant to a warrant obtained in good faith, and the evidence should be admitted under the good faith exception to the exclusionary rule established in *United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (en banc), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). The Commission responded by adopting the exclusionary rule and rejecting the Secretary's argument for a good faith exception.

Before we can evaluate the applicability of a good faith exception, we must determine whether the exclusionary rule has a role in OSHA proceedings. In *Barlow's* the Supreme Court ruled that OSHA compliance inspections were subject to fourth amendment protections. Because of the posture of the case, however, the applicability of the exclusionary sanction did not arise as an issue.[12] The issue therefore remains "an unsettled and highly controversial area of the law." *Cerro Metal Products v. Marshall,* 620 F.2d 964, 974 (3d Cir.1980). *See generally* Trent, *OSHA and the Exclusionary Rule: Should the Employer Go Free Because the Compliance Officer has Blundered?,* 1981 Duke L.J. 667.

We premise our analysis on the assumption that the primary function of an exclusionary sanction is to deter unlawful conduct. *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976); *United States v. Calandra,* 414 U.S. 338, 347–78, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561 (1974). In spite of recent public criticism and judicial limitations on the scope of the exclusionary rule, the Supreme Court continues to adhere to its position that some form of exclusion is necessary to deter conduct in violation of fourth amendment rights—at least in the absence of other procedures for enforcement of the fourth amendment. Whether exclusion of evidence is appropriate in a particular proceeding depends upon whether the deterrent effect of the sanction outweighs the cost to society of suppressing relevant evidence. *See Janis,* 428 U.S. at 448–49, 94 S.Ct. at

---

**12.** The Court merely issued a declaratory judgment that the Occupational Health and Safety Act was unconstitutional insofar as it authoriz-

ed warrantless inspections, and enjoined enforcement of the Act to that extent. 436 U.S. at 325, 98 S.Ct. at 1827.

3029–3030. Here, the Commission simply concluded that the deterrent impact of the sanction outweighed the cost of dismissing Sarasota's citation.

It has been suggested that the civil nature of OSHA proceedings may preclude application of the exclusionary rule because the Supreme Court has never applied the sanction in a civil proceeding. *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683, 689 (9th Cir.1978).[13] The case generally cited to support this proposition is *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), in which the Court refused to apply the exclusionary rule in a civil tax proceeding. *Janis,* however, does not stand for the proposition that evidence may never be excluded in a civil proceeding. The Court concluded only that suppression of illegally obtained evidence in defendant's tax proceeding would not deter the type of unlawful conduct that had taken place. *Id.* at 454, 96 S.Ct. at 3032. The facts of the case are crucial because the administrative agency introducing the evidence (Internal Revenue Service) was not responsible for the unlawful search and seizure. State police officers procured the evidence and then turned it over to the IRS. *Id.* at 436, 96 S.Ct. at 3023–3024. In evaluating the need for a deterrent sanction in the defendant's tax proceeding, the Court reasoned that exclusion of the evidence in defendant's state and federal criminal prosecution was sufficient to deter illegal conduct on the part of state police officers. *Id.* at 448, 96 S.Ct. at 3029.[14]

In contrast, the administrative scheme governing OSHA inspections provides a ready mechanism for the enforcement of fourth amendment rights. The Commission concluded that the introduction of an exclu-

sionary sanction would have "an appreciable impact on the actions of OSHA officials and inspectors." As OSHRC stated

> We base this conclusion on the centralized enforcement scheme created under the Act. Not only does the Secretary have statutory authority to determine the manner in which all section 8 inspections are conducted, but also he has the additional power and control arising from his position as employer and supervisor of the personnel who conduct those inspections. In addition, the Secretary has the discretion to decide which contested citations shall be prosecuted in civil proceedings under the Act. Thus, he has the capability of issuing and enforcing guidelines to effectuate our holdings involving fourth amendment claims and to respond quickly to the announcement of these holdings. Finally, the Commission has the authority to ensure that fourth amendment principles are uniformly applied in civil proceedings under the Act.

OSHRC Decision at 13.

■ We agree with OSHRC's assessment of the potential deterrent impact of an exclusionary sanction. Assuming that the exclusionary rule is the proper enforcement tool when such deterrence is likely to result, its application in OSHRC proceedings is not improper. *See Babcock & Wilcox,* 610 F.2d at 1136; *Savina Home Industries, Inc. v. Secretary of Labor,* 594 F.2d 1358, 1361 (10th Cir.1979); *Weyerhaeuser Co. v. Marshall,* 6 OSHRC (BNA) 1811 (E.D. Wis.1978), *aff'd,* 592 F.2d 373 (7th Cir.1979). If fourth amendment rights are to be recognized in an OSHA context, it seems reasonable that the only enforcement mechanism developed to date should likewise be recognized. *See Savina Home,* 599 F.2d at 1361.

> In short, we conclude that exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion. This Court, therefore, is not justified in so extending exclusionary rule.

> 428 U.S. at 454, 96 S.Ct. at 3032 (footnote omitted).

**13.** The exclusionary sanction, however, has been applied in civil and administrative courts other than the Supreme Court. *See, e.g., Midwest Growers Cooperative Corp. v. Kirkemo,* 533 F.2d 455, 466 (9th Cir.1976) (ICC); *Pizzarello v. United States,* 408 F.2d 579 (2d Cir.), *cert. denied,* 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) (IRS); *Knoll Associates, Inc. v. FTC,* 397 F.2d 530 (7th Cir.1968) (FTC).

**14.** The Court's conclusion was as follows:

## V. GOOD FAITH

The Commission determined that an exclusionary sanction would serve a significant deterrent function in its proceedings. Moreover, OSHRC refused to dilute the deterrent impact of the sanction, rejecting the Secretary's argument that OSHA acted in good faith in obtaining a full scope warrant on the basis of Storey's specific complaint. Instead, it concluded, "The ultimate issue is not the Secretary's good faith, but whether the Secretary lawfully obtained the evidence under the fourth amendment." OSHRC Decision at 15 (citing *Sibron v. New York,* 392 U.S. 40, 61, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968).).

Nevertheless, the Secretary responds that the Commission was bound to recognize the good faith exception enunciated in *United States v. Williams,* 622 F.2d 830 (5th Cir. 1980) (en banc), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). In *Williams,* twelve members of the former Fifth Circuit announced the following rule:

> Henceforth in this circuit, when evidence is sought to be excluded because of police conduct leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question, if mistaken or unauthorized, was yet taken in a reasonable, good-faith belief that it was proper. If the court so finds, it shall not apply the exclusionary rule to the evidence.

*Id.* at 846–47. However, the court premised its discussion by stating, "No warrant is involved here, hence nothing that we say applies to factual situations where one has been obtained." *Id.* at 840 n. 1. *Williams* also was a criminal prosecution based on evidence obtained pursuant to a search incident to arrest. In contrast, the citation issued against Sarasota was civil in nature. The evidence also was obtained in a search conducted pursuant to a defective warrant. Thus, OSHRC was not bound to adhere to the analysis set forth in *Williams.*[15]

The Commission simply promulgated a rule excluding evidence in its own proceeding. It concluded that the cost of dismissing the citation of "non-serious" violations issued against Sarasota was outweighed by the need to ensure widespread OSHA agent compliance with the fourth amendment. In approving this action, we do not, as the Secretary suggests, recognize that the Commission has any special expertise in deciding constitutional issues. *See Baldwin,* 642 F.2d at 772. Rather, we propose that the Commission is in a good position to determine if the exclusionary sanction is an appropriate enforcement mechanism in its own proceedings, subject to review by the courts. Indeed, the Commission may claim a special expertise in its understanding of OSHA procedures and practice. From that perspective, it is best able to evaluate the deterrent impact of the exclusionary rule.

But even if a good faith exception would be appropriate in OSHA proceedings, it would be difficult to apply the exception to the facts of this case. The Secretary claims that when OSHA applied for the warrant to inspect Sarasota, district courts were split on the issue of whether a specific complaint could support a full scope inspection. In essence, OSHA officials decided to risk a questionable search and now expect to escape responsibility by alleging good faith. Such risk taking with the constitutional rights of others hardly can be characterized as acting in good faith. Moreover, OSHA applied for a full scope investigation solely on the basis of Storey's truck complaint. The complaint was over six months old at the time of application and OSHA apparently took no steps to validate the claim. Although this delay and failure to validate does not defeat a determination of probable cause to inspect the truck area, these oversights do not help the Secretary's allegation of good faith.

Because we find that the Commission did not err in applying the exclusionary rule to

---

**15.** *But see Robberson Steel Co. v. OSHRC,* 645 F.2d 22, 22 (10th Cir.1980) (indicating that *Williams* is applicable in OSHA proceedings.)

the facts of this case, its order dismissing the citation against Sarasota is

AFFIRMED.