[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17745
_____

D.C. Docket No. 2:16-cv-00192-WCO

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MAR-JAC POULTRY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 9, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and STEELE,* District Judge.

_____

* Honorable John E. Steele, United States District Judge for the Middle District of
Florida, sitting by designation.

STEELE, District Judge:

The district court quashed a judicially-issued inspection warrant for a poultry processing facility, but stated that the United States could submit a new warrant application with a reduced scope. Rather than present such a new application, the United States chose to forego inspection but appeal the district court's decision. After review of the record, and with the benefit of oral argument, the court affirms the district court's order quashing the inspection warrant.

**I.**

On February 3, 2016, an employee of Mar-Jac Poultry, Inc. ("Mar-Jac"), a poultry processing facility in Georgia, was injured at work while attempting to repair an electrical panel using a non-insulated screwdriver. An arc flash resulted in severe burns to the employee's hand and face, and required the employee's hospitalization.

On February 4, 2016, Mar-Jac reported the electrical accident to the United States Department of Labor's Occupational Safety and Health Administration ("OSHA"), as it was required to do by federal regulation. In response, on February 8, 2016, OSHA sent an inspection team to Mar-Jac's facility to make an unprogrammed inspection, i.e., an inspection based upon information received concerning the specific facility. The OSHA investigators requested to inspect not only those hazards involved in the electrical accident, but also to conduct a

2

comprehensive inspection of the entire facility for additional hazards.  Mar-Jac

consented to inspection of the electrical accident site and the tools involved, but

refused to permit inspection of any additional areas or hazards.  OSHA's physical

inspection of the poultry facility, as limited by Mar-Jac, found three potential

violations of OSHA standards concerning (1) electrical safety, (2) personal

protective equipment, and (3) the guarding of machines and controlling of

hazardous energy.

In addition to allowing the limited physical inspection, Mar-Jac provided

OSHA with a copy of a portion of an evaluation performed by an outside

consultant which criticized the company's lack of an appropriate program to abate

risks to employees from electrical shocks.[1]  Mar-Jac also provided OSHA with the

company's 2013-2015 work-related serious illness and injury logs ("OSHA 300

logs") mandated by federal regulation.  OSHA ultimately concluded that the

OSHA 300 logs suggested violations in six areas common to poultry processing:

(1) recordkeeping issues, (2) ergonomic hazards, (3) biological hazards, (4)

chemical hazards, (5) struck-by hazards, and (6) slip, trip, and fall hazards.

In addition to having this information specific to the Mar-Jac facility, OSHA

had created "emphasis programs" in industries that pose a high risk to workers.

---

[1] Mar-Jac did not provide OSHA with a full copy of the report, but only provided the portions regarding the lack of an electrical hazard program.

For fiscal year 2016, the Regional Emphasis Program for Poultry Processing Facilities for Region IV ("Poultry REP") identified sixteen categories of hazards which were of particular concern in poultry processing facilities in Georgia and seven neighboring states.   The Poultry REP also provided neutral criterion which could lead to a randomly generated "programmed" inspection of a particular facility.

On March 31, 2016, OSHA submitted an application to a federal magistrate judge seeking a judicial warrant to inspect the Mar-Jac facility with respect to the three hazards directly implicated by the accident, the six hazards implicated by the OSHA 300 logs, and the remaining hazards that the Poultry REP identified as being of particular concern within the poultry processing industry.  The application sought this inspection based on two independent grounds.  First, the application asserted that the investigators had personally observed hazards relating to the electrical incident, and that an inspection of the OSHA 300 logs revealed six hazards common to poultry processing facilities.  Based on this specific evidence, OSHA asserted that probable cause existed to conduct a comprehensive search of the entire facility for these hazards and the remaining hazards identified in the Poultry REP.  Second, the application asserted in the alternative that probable cause existed to support a programmed inspection pursuant to neutral criteria contained in OSHA's Poultry REP.

4

On April 1, 2016, the magistrate judge granted the application in its entirety and issued a judicial inspection warrant as requested by OSHA.

Mar-Jac promptly filed an emergency motion to quash the inspection warrant. The issuing magistrate judge held a hearing on the motion to quash, took testimony, and ultimately issued a Report and Recommendation to the district court recommending that Mar-Jac's motion to quash be granted. During the evidentiary hearing, evidence in addition to that which was initially included with the warrant application was presented and considered by the magistrate judge.

On November 2, 2016, over OSHA's objections, the district judge adopted the magistrate judge's Report and Recommendation and quashed the inspection warrant. In a written opinion, the district court found, as had the magistrate judge, that OSHA had demonstrated administrative probable cause for issuance of a warrant to inspect for (1) electrical dangers, (2) the availability and use of personal protective equipment, (3) the guarding of machines and the controlling hazardous energy, and (4) recordkeeping violations. The district court also found, as had the magistrate judge, a lack of reasonable suspicion for the other five violations which OSHA asserted were supported by the OSHA 300 logs and the remaining hazards identified in the Poultry REP. The district court further found that OSHA had failed to establish that Mar-Jac was selected for inspection pursuant to an application of neutral criteria. The district court stated that OSHA could seek a

5

new inspection warrant consistent with these parameters. The district court, like the magistrate judge, considered the additional evidence presented at the evidentiary hearing in adopting the Report and Recommendation.

OSHA never sought a new inspection warrant, but rather filed this appeal pursuant to 29 U.S.C. § 1291.

## II.

On appeal, the United States asserts that the district court improperly quashed the inspection warrant with respect to five hazards: (1) ergonomic hazards; (2) biological hazards; (3) chemical hazards; (4) struck-by hazards; and (5) slip, trip, and fall hazards.[2]  The United States argues that OSHA had demonstrated "ample" reasonable suspicion that an inspection with regard to these five hazards would reveal violations of the Act, and asserts that the district court erred as follows: (1) While the district court acknowledged that OSHA was required to show reasonable suspicion of violations, it actually applied a far higher standard by requiring OSHA to show that employees had been injured as the result of a violation of an OSHA standard; (2) The district court misunderstood the terms "hazard" and "violation" and their relation to one another; and (3) The district

---

[2]  The United States does not appeal the district court's determination that OSHA did not have sufficient grounds to obtain a warrant as to the other hazards identified in the Poultry REP that were not related to the electrical incident nor supported by the OSHA 300 logs, or the district court's rejection of the basis for a programmed inspection.

6

court mistakenly suggested that OSHA relied on the mere presence of a reported injury to call for a full scale investigation of the hazard related to the injury.

## A. Standard of Review

The Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation omitted). *See also West Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir. 1982) ("A magistrate's probable cause determination is entitled great deference, and is conclusive in the absence of arbitrariness." (internal citation omitted)). This remains the standard even though a *de novo* standard is applied to review determinations of reasonable suspicion and probable cause when no warrant was involved. *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996).[3]

Matters of law are reviewed *de novo,* and the Court applies a *de novo* standard in determining whether the lower court applied the correct legal standard. *United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir. 2000).

---

[3] The Court notes that published decisions from this Circuit have held that these Supreme Court cases require a *de novo* standard even when a warrant was involved. *E.g.*, *United States v. Albury*, 782 F.3d 1285, 1292 (11th Cir. 2015); *United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011); *United States v. Butler*, 102 F.3d 1191, 1198 (11th Cir. 1997).

**B. The Occupational Safety and Health Act of 1970**

The Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* (the "Act") , "delegates broad authority to the Secretary [of Labor] to promulgate different kinds of standards" for the purpose of "ensuring safe and healthful working conditions for every working man and woman in the Nation." *Indus. Union Dep't, AFL–CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 611 (1980). To enforce these standards, the Act, among other things, authorizes two types of inspections by the Secretary, acting through OSHA. A programmed inspection may be conducted in accordance with a general administrative plan based on neutral criteria, 29 U.S.C. § 657(a) (sometimes referred to as section 8(a) of the Act), or an unprogrammed inspection may be conducted based on specific evidence of an existing violation, 29 U.S.C. § 657(f) (sometimes referred to as section 8(f) of the Act). *See Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1068 (11th Cir. 1982); *West Point-Pepperell, Inc.*, 689 F.2d at 956-57.

Although the Act does not explicitly require a judicial warrant to conduct either type of inspection, it is clear after *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) that, unless the employer consents, a judicial warrant is required by the Fourth Amendment of the United States Constitution. *Donovan*, 693 F.2d at 1068; *West Point-Pepperell, Inc.*, 689 F.2d at 956-57. While probable cause is necessary to obtain an inspection warrant, it is not probable cause in the criminal

8

sense. *Barlow's, Inc.*, 436 U.S. at 320 ("Probable cause in the criminal law sense is not required."). Rather, the required probable cause for an inspection warrant may consist of either (1) a showing of specific evidence of an existing violation, or (2) a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Id.* at 320–21 (alterations in original) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 538 (1967)). Because the United States does not appeal the district court's rejection of its argument concerning a programmed inspection based upon reasonable administrative standards pursuant to the Poultry REP, the Court focuses only on probable cause based upon specific evidence.

"[A] more individualized inquiry is required" when examining a warrant for an unprogrammed inspection because of the "increased danger of abuse of discretion and intrusiveness" due to the "lack [of] administrative and legislative guidelines that ensure that the target of the search was not chosen for the purpose of harassment." *Donovan*, 693 F.2d at 1068. While probable cause in the criminal law sense is not required, "[r]easonableness remains the ultimate standard in evaluating the propriety of an administrative search." *Id.* at 1069-70; *West Point-Pepperell, Inc.*, 689 F.2d at 957.

> Hence, the evidence of a specific violation required to establish administrative probable cause, while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been

9

or is being committed and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.

*West Point-Pepperell, Inc.*, 689 F.2d at 958.

The scope of such an unprogrammed inspection must bear an appropriate relationship to the violation alleged by the evidence. *Donovan*, 693 F.2d at 1068–69. "[W]hen nothing more is offered than a specific complaint relating to a localized condition, probable cause exists for a search to determine only whether the complaint is valid." *Id.* A full scope inspection of a facility may nonetheless be authorized in some circumstances. For example, *Donovan* stated "it is conceivable that a specific violation plus a past pattern of violations may be probable cause for a full scope inspection. In addition, a specific complaint may allege a violation which permeates the workplace so that a full scope inspection is reasonably related to the complaint." *Id.* at 1068–69.

## C. Alleged District Court Errors

### (1) Utilization of Improper Probable Cause Standard

The United States asserts that the district court, while citing to the correct reasonable suspicion standard, actually applied a more stringent, and improper, standard by requiring OSHA to affirmatively show that the injuries occurred as a result of a violation. To support this conclusion, the United States cites the following two sentences from the district court's written opinion: "The fact that an

10

injury or illness is recordable [in the OSHA 300 logs] does not show that it was the result of a violation of an OSHA standard," and that "the magistrate judge correctly concluded 'the mere presence of a reported injury on the OSHA 300 form [does not] support a full scale investigation of the hazard related to that injury.'"

After *de novo* review, we conclude that the district court utilized the correct legal standard.  The district court clearly recognized the Eleventh Circuit's adoption of the reasonable suspicion standard in *West Point-Pepperell, Inc.*, 689 F.2d at 958, and applied that standard to the facts alleged in the warrant application.  The district court did not impose a more stringent standard, but simply found that the facts set forth by OSHA did not satisfy the reasonable suspicion standard.  The two sentences cited by the United States do not demonstrate the contrary.  The district court did not apply an incorrect legal standard in its review of the sufficiency of the application for the inspection warrant.

### (2)  Distinction Between "Hazard" and "Violation"

The United States also asserts that the district court confused the terms "hazard" and "violation," and mistakenly believed that evidence of a hazard is wholly distinct from evidence of a violation.  The United States argues that hazards can be violations, and points to the injuries reported in the OSHA 300 logs for the proposition that because there was an injury, there must have been a hazard, and because there was a hazard, there is likely a violation to be found.

11

The existence of a "hazard" does not necessarily establish the existence of a "violation," and it is a "violation" which must be established by reasonable suspicion in the application. It is certainly true that each covered employer "shall comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2). It is simply not the case that the existence of a hazard necessarily establishes a violation, and the government's citation to the general duty clause is not to the contrary.

To implement the purpose of OSHA, "Congress imposed dual obligations on employers," "a 'general duty' to free the workplace of all recognized hazards" and "a 'special duty' to comply with all mandatory health and safety standards." *ComTran Grp., Inc. v. U.S. Dept. of Labor*, 722 F.3d 1304, 1307 (11th Cir. 2013). A covered employer "commits a general duty clause violation when he fails to 'furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.'" *Pepper Contracting Servs. v. Occupational Safety & Health Admin.*, 657 F. App'x 844, 847 (11th Cir. 2016) (quoting 29 U.S.C. § 654(a)(1)). To prove a violation of a general duty clause, "the Secretary must establish that '(1) the employer failed to render its work place free of a hazard; (2) the hazard was recognized; . . . (3) the hazard caused or was likely to cause death or serious physical harm' and '(4) the hazard [was]

12

preventable.'" *Id.* at 847–48 (omission in original) (citation omitted).   On the other hand, a violation of an OSHA standard is established by showing "(1) that the regulation applied; (2) that it was violated; (3) that an employee was exposed to the hazard that was created; and importantly, (4) that the employer 'knowingly disregarded' the Act's requirements." *ComTran Grp., Inc.*, 722 F.3d at 1307. Therefore, under either the general or special duty clause, a hazard does not itself establish a violation.  The district court did not err in distinguishing between hazards and violations.

### (3) Application's Evidence of Reasonable Suspicion

It is undisputed that there is no relation between the electrical accident and the five hazards at issue.  The United States asserts, however, that the application for the inspection warrant provided "ample evidence" of reasonable suspicion of violations as to the five hazards at issue.  The United States views the OSHA 300 logs and the analysis of the logs by OSHA officials as being of particular importance with regard to these five hazards.

The OSHA 300 logs contain a listing of work-related injuries and illnesses that employers are required to record and maintain.  29 C.F.R. §§ 1904.4, 1904.7. The logs contain the employee's name, job title, date of injury or illness, location where the event occurred, description of the injury or illness, classification of the case, number of days missed, and whether it was an injury or other type of illness.

13

A "one or two line description for each recordable injury or illness" is to be included on the OSHA 300 logs.   29 C.F.R. § 1904.29.  Many of the descriptions leave the reader knowing little, if anything, about the actual cause of the injury or illness.  The descriptions relied on by OSHA are those such as: "Sprain/Back/Concrete Steps" and "irritation/left eye/water."

These logs, as their title suggests, record work-related injuries and illnesses, not OSHA violations.  The Regulations provide that "[r]ecording or reporting a work-related injury, illness, or fatality does not mean that the employer or employee was at fault, that an OSHA rule has been violated, or that the employee is eligible for workers' compensation or other benefits."  29 C.F.R. § 1904.0.   The existence of injuries thus does not necessarily mean that the injuries were caused by OSHA violations, or justify the issuance of an administrative warrant for evidence of OSHA violations.  The Court notes, however, that although OSHA 300 logs do not document the cause of the injury or illness, they can be relevant to whether hazards exist.

The content of the OSHA 300 logs in this case fails to create reasonable suspicion either alone or in combination with the other information in the application.  As to ergonomic hazards, the United States asserts that "multiple reports of work-related musculoskeletal illnesses, such as tendonitis and tendomyopathy" are recorded in the OSHA 300 logs, providing reasonable

14

suspicion that Mar-Jac lacks an appropriate ergonomics program. A review of the OSHA 300 logs shows that the twenty-five incidents relied on to support a warrant to inspect as to an ergonomics plan have vague descriptions and fail to show any pattern as to the location of the injury (elbow, hand, wrist, back, shoulder, thigh, arm, knee, etc.) or any pattern as to the department where the injuries occurred (rehang, debone, live dock, shipping, evisceration, cone line, stack off, sizing, etc.). With a workforce of 1,112 employees within the facility, the OSHA 300 logs fail to provide reasonable suspicion that ergonomics violations are likely to be found.

As to biological and chemical hazards, the United States asserts that "multiple reports of eye infections and eye injuries among workers in the areas where workers encounter live chickens and sanitation chemicals, respectively, provid[e] cause for reasonable suspicion that Mar-Jac is not taking adequate steps to abate biological and chemical hazards." The OSHA 300 logs from 2015 contain ten reports of eye injuries, the 2014 logs contain two reports of eye injuries, and the 2013 logs contain zero reports of eye injuries. Therefore, the United States asserts that twelve eye injuries over the course of three years among 1,112 employees provides reasonable suspicion that biological and chemical violations may be found. The Court disagrees, and holds that these logs on their own fail to establish reasonable suspicion of biological and chemical violations.

15

As to struck-by hazards, the United States asserts that "multiple reports of employees being injured by equipment used to transport products and material" provide cause for reasonable suspicion that material power industrial truck hazards will be found. The sole evidence relied upon by the United States is six struck-by injuries recorded in the 2015 OSHA 300 logs. The Court finds that six recorded incidents over a year at a facility with over a thousand employees do not provide reasonable suspicion that struck-by violations are likely to be found at the facility.

Lastly, as to slip, trip, and fall hazards, the United States asserts that "multiple reports of workers suffering slip-related injuries[] provid[e] cause for reasonable suspicion that Mar-Jac has failed to adequately prevent common slip, trip, and fall hazards." As support, the United States points to seven slip, trip, and fall injuries recorded in the 2015 OSHA 300 logs. Once again, the Court finds that seven slip, trip, and/or fall recordings in the 2015 OSHA logs at a poultry processing facility with over one thousand employees do not provide reasonable suspicion to support the issuance of a warrant to search for slip, trip, or fall violations.

In its affidavit to the magistrate judge, OSHA also attached citations and a settlement agreement entered into between Mar-Jac and OSHA in 2009. A review of the previous citations from more than seven years before reveals that no citations were issued for violations relating to ergonomic, biological, struck-by, or

16

slip, trip, and fall hazards.  Three of the citations seemingly relate to chemical hazards—one regarding the rust that occurred from ammonia corrosion; one for failure to wear safety goggles; and one for failure to have facilities for drenching and flushing of the eyes.  Even when considered in conjunction with the ten eye injury reports in the 2015 OSHA 300 logs and the two eye injury reports in the 2014 OSHA 300 logs, the Court does not find that reasonable suspicion of likely chemical violations sufficient to support issuance of a warrant to inspect for chemical violations.

As the magistrate judge and the district judge both noted, OSHA may file a new application for a warrant to inspect as to these potential violations, and the judicial officer will determine anew whether OSHA has established the required administrative probable cause.[4]

For the reasons stated, the judgment of the district court is **affirmed**.

---

[4] Affidavits in support of search warrants can become stale under certain circumstances.  *United States v. Domme*, 753 F.2d 950, 953 (1985).

JORDAN, Circuit Judge, concurring in the judgment.

I agree that we should affirm the district court's order quashing the inspection warrant as to the five hazards that are the subject of OSHA's appeal. But I think the case is a close one, and write to explain why.

The circumstances presented are unusual. After Mar-Jac moved to quash the warrant, the magistrate judge held an evidentiary hearing. In their orders, both the magistrate judge and the district court considered the additional evidence presented by OSHA at the hearing. *See* D.E. 14 at 6-7; D.E. 19 at 4-8, 12-13. On appeal OSHA has argued the issue of administrative probable cause under *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320-21 (1978), and its progeny by relying in part on the evidence presented at the hearing, and Mar-Jac has not objected to that mode of analysis (though it has focused its own argument on the OSHA 300 logs). *See* Br. for Appellant at 19; Br. for Appellee at 8-22. I therefore assume, without deciding, that OSHA could supplement its application and affidavit for a warrant with the subsequent testimony and evidence presented at the hearing.

OSHA 300 logs do not document the cause of an injury or illness, *see* 29 C.F.R. § 1904.29, but they are relevant to whether hazards exist. And hazards matter, because the question of administrative probable cause is not whether there is evidence of actual violations, but rather whether there is "specific evidence sufficient to support a *reasonable suspicion* of a violation." *West Point Pepperell,*

18

*Inc. v. Donovan*, 689 F.2d 950, 958 (11ᵗʰ Cir. 1982).  The evidence presented at the hearing, which included some comparative analysis of the information in the OSHA logs (e.g., how the number of certain injuries at Mar-Jac compares to industry averages), makes the issue of administrative probable cause somewhat more difficult.  The more that a company's injuries exceed the industry average, it seems to me, the more likely that the OSHA logs can provide a reasonable suspicion of existing violations.

But we are not exercising plenary review, and the applicable standard of review here drives the result.  A lower court's determination of probable cause (and also, I think, its determination of lack of probable cause) in a warrant scenario "should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  In the administrative context, we have explained that a "magistrate's probable cause determination is entitled to great deference, and is conclusive in the absence of arbitrariness." *West Point Pepperell*, 689 F.2d at 959 (citations omitted).  Under this deferential standard, OSHA cannot obtain reversal.