**PENNSYLVANIA STEEL FOUNDRY AND MACHINE COMPANY, Petitioner,**

v.

**SECRETARY OF LABOR, Respondent,**

**United Steelworkers of America, AFL–CIO–CLC, Intervenor.**

No. 86–3546.

United States Court of Appeals, Third Circuit.

Argued April 10, 1987.

Decided Oct. 20, 1987.

**1212**

Robert D. Moran (argued), Vorys, Sater, Seymour and Pease, Washington, D.C., for petitioner.

Sandra Lord (argued), Asst. Counsel for Appellate Litigation, George R. Salem, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Joseph M. Woodward, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., for respondent.

Mary Win O'Brien, United Steelworkers of America, Pittsburgh, Pa., for intervenor.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The principal issue before us is whether the Occupational Safety and Health Review Commission (OSHRC or the Commission) erred in failing to suppress evidence from an inspection authorized by an ex parte warrant. The contested evidence was the basis of the agency's decision that Pennsylvania Steel Foundry (Penn Steel) committed numerous violations of the Occupational Safety and Health Act (the Act), 29 U.S.C. § 651 *et seq.* (1982). An additional issue is whether the Commission improperly enforced a settlement agreement from which Penn Steel contends it withdrew before the agreement was final.

### I.

#### *Facts*

On June 13, 1977, OSHA compliance inspectors sought to conduct a comprehensive inspection of Penn Steel's Hamburg, Pennsylvania foundry. Penn Steel refused to permit the inspection without a warrant. On August 15, 1977, OSHA made an ex parte application to a federal magistrate for an inspection warrant. The application set forth that the foundry had been cited in 1973 for three violations,[1] that Penn Steel contested the citation but subsequently withdrew its contest on the ground that the violations had been abated; that after a follow-up inspection in 1974 two more citations were issued, one for a "repeated" violation of the silica dust standards; that ultimately the foundry withdrew its contest to these violations, representing that the violations had been or would be abated; and that an attorney for Penn Steel advised OSHA by letter dated March 5, 1976 that some abatement controls previously agreed to as to dust levels and noise controls were either economically or technically infeasible. The warrant application also described the National Emphasis Program (NEP) which had been established in 1976 "to reduce hazards in industries reporting a higher than average rate of injuries and illnesses." App. at 72. The application further stated that iron and steel foundries were among the first target industries selected for inspections, citing foundry illness and injury rates of 26.6 per 100 workers as compared to the national average of 8.8.

On August 25, 1977, the magistrate issued an inspection warrant for Penn Steel's foundry to be conducted "in accordance with the guidelines set forth in the OSHA National Emphasis Program for Foudries." App. at 66. The warrant stated that it was ordered pursuant to section 8(a) of the Act, 29 U.S.C. § 657(a), which provides for inspection of the entire workplace "within reasonable limits." Pursuant to the warrant, OSHA compliance officers conducted a full-scope health and safety inspection of the entire worksite where the foundry is located. OSHA issued citations for 298 violations of OSHA standards.

A hearing on the citations before an administrative law judge began on January

---

**1.** The violations were for exposure of employees to excessive concentrations of silica dust, exposure of an employee to an excessive concentra- tion of iron oxide fume, and exposing employees to toxic materials in a lunch room area. App. at 69.

15, 1979. After three days, the hearing was recessed to allow the parties to attempt to negotiate a settlement. In August 1979, Penn Steel moved in the Commission for summary judgment on the grounds, *inter alia,* that there was no probable cause for the warrant as required by the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), and that ex parte warrants in OSHA cases were invalid under *Cerro Metal Products v. Marshall,* 467 F.Supp. 869 (E.D.Pa.1979).

Without reaching the merits of either of these objections, the ALJ expressed the opinion "that the Supreme Court would not apply the exclusionary rule retroactively under circumstances similar to those of this case," App. at 442, and, after noting that ex parte warrants had been "standard practice" in OSHA cases prior to *Barlow's,* appeared to apply a good faith exception. App. at 443.

The parties settled 240 citations and notified the ALJ, who recommenced the administrative hearing on December 5, 1979, to hear evidence on the remaining fifty-eight items. On June 27, 1980, the ALJ issued a preliminary decision and order affirming some items, vacating others and reducing the characterization of still others.

The parties executed a Stipulation of Settlement in June 1981 regarding the 240 settled citations which provided that the "disposition set forth [in the ALJ's preliminary decision] shall take effect ... on the date this stipulation becomes a final order of the Commission." App. at 80. Both parties reserved their rights under the Act, 29 U.S.C. § 660, to petition for review of the ALJ's decision. On July 13, 1981, the ALJ issued a Final Decision and Order "fully implement[ing]" the preliminary decision on the fifty-eight litigated items, approving the settlement, assessing a $5,000 fine provided in the settlement, and requiring abatement as provided for by the settlement. App. at 77–79.

In its petition for review to the Commission Penn Steel sought suppression of all evidence and dismissal on the probable cause and ex parte warrant grounds raised before the ALJ. Both Penn Steel and the Secretary contested the ALJ's rulings on some of the fifty-eight litigated items. The Commission initially directed review on certain of the litigated items. There was no action in the case between January 1983 and February 1986.[2]

In January 1986, the Commission requested supplemental briefs on several issues, including the applicability of a good faith exception to the exclusionary rule and the effect of this court's decision in *Cerro Metal Products v. Marshall,* 620 F.2d 964 (3d Cir.1980), affirming the district court's order holding ex parte warrants to be invalid. In its brief to the Commission dated October 25, 1982, Penn Steel stated, for the first time, that, "[i]n its exercise of its right to do so, Respondent withdraws from the pending settlement agreement." App. at 166.

The Commission, by a two-to-one vote, refused to suppress the evidence obtained from the inspection. The Commission treated Penn Steel's statement of withdrawal from the settlement as a motion to withdraw, which it denied, and held that judgment on the 240 unlitigated items should be entered in accordance with the settlement agreement, which included an assessment of a $5,000 penalty.[3] Penn Steel petitions for review of the Commission's order.

## II.

### *Existence of a Quorum*

As a preliminary matter, Penn Steel argues that no part of the Commission's decision can be affirmed because there were not two affirmative votes on the existence or absence of probable cause.

■ The Act provides that "two members of the Commission shall constitute a quorum and official action can be taken

---

2. No reason for this inaction was given by the parties or by the Commission in its decision.

3. The Commission also ruled on the merits of the challenges to the litigated items. These rulings are not at issue in this appeal.

only on the affirmative vote of at least two members." 29 U.S.C. § 661(f). All three members of the Commission participated in the decision. However, Chairman Buckley declined to take part in the probable cause determination because he believed that the Commission, as an administrative agency within the executive branch, cannot perform functions committed to the judicial branch and hence cannot review a magistrate's determination of probable cause. The other two Commissioners reached the merits but were divided on probable cause. Penn Steel argues that it was deprived of "its due process right to a decision on each exception presented" because a quorum did not make a finding of probable cause. Petitioner's Brief at 5.

This court considered a similar argument in *Marshall v. Sun Petroleum Products Co.*, 622 F.2d 1176 (3d Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), where Sun argued that a divided decision by two members of OSHRC was not a final order for purposes of this court's review. We rejected that contention, quoting the Fourth Circuit's statement that "[a] review of the legislative history of § 12 of the Act [29 U.S.C. § 661] reveals no intent to limit judicial review of the Commission's decisions." *George Hyman Construction Co. v. OSHRC*, 582 F.2d 834, 837 n. 5 (4th Cir.1978), *quoted in Sun Petroleum*, 622 F.2d at 1180.

Penn Steel's couching of its argument in due process terms does not alter the result. In *Sun Petroleum*, we stated: "Like the decision of an equally divided court, the action of an equally divided Commission may be examined by the next link in the hierarchal chain of review." 622 F.2d at 1180.

## III.

### *Validity of the Warrant*

We turn to Penn Steel's argument that all evidence from the inspection should have been suppressed because the warrant was not supported by an adequate showing

of probable cause and was issued ex parte in violation of the agency's own regulation.

## A.

### *Probable Cause*

In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court held that a search warrant supported by probable cause is constitutionally required for OSHA inspections.[4] However, the Court distinguished between "[p]robable cause in the criminal law sense" and probable cause for an administrative search. *Id.* at 320, 98 S.Ct. at 1824. In the latter case, "a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320–21, 98 S.Ct. at 1824 (1967) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967) (footnote omitted)). The Court stated that an employer's Fourth Amendment rights would be protected by a warrant "showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources." *Id.* at 321, 98 S.Ct. at 1824–25.

Ordinarily an enforcement program such as that contained in the NEP, which provides for "consultation, training and education, evaluation, and compliance monitoring," App. at 185, would constitute the type of "general administrative plan" discussed in *Barlow's*. Penn Steel argues that this NEP is defective because it does not "regulate[ ] the manner of *selection* of the premises to be searched." Petitioner's Opening Brief at 6–7. It contends that because the NEP provided no explanation of why Penn Steel, in particular, was chosen for an NEP inspection, it cannot serve as the basis for probable cause under *Barlow's*.

Penn Steel points to a footnote in *Barlow's* in which the Court commented that

---

4. Although *Barlow's* was decided after the warrant in this case was issued, none of the parties

dispute that the probable cause standard enunciated in *Barlow's* is the applicable standard.

"[t]he [OSHA inspection] program was not described ... or any facts presented that would indicate why an inspection of Barlow's establishment was within the program." 436 U.S. at 323 n. 20, 98 S.Ct. at 1826 n. 20. We do not read this statement as requiring anything more than that the warrant application describe the program and aver that the worksite fits within the program. In *Camara v. Municipal Court,* upon which the *Barlow's* opinion relied, the Court expressly rejected the argument that warrants should issue only when there was probable cause to believe that a particular building is in violation of the minimum standard prescribed by the code being enforced. 387 U.S. at 534, 87 S.Ct. at 1733. The Court held that warrants for administrative health and safety inspections, which "involve a relatively limited invasion of the urban citizen's privacy," *id.* at 537, 87 S.Ct. at 1735. could be sustained because they serve "the reasonable goals of code enforcement," *id.* at 536, 87 S.Ct. at 1735. It is sufficient probable cause to sustain such warrants if these goals, and the scheme to achieve them, are expressed in a "general administrative plan."

At least three circuits have upheld inspections pursuant to warrants which were based on the fact that the establishment fell within a particular OSHA enforcement plan. In *In re Establishment Inspection of Gilbert & Bennett Manufacturing Co.,* 589 F.2d 1335 (7th Cir.), *cert. denied sub nom. Chromalloy American Corp. v. Marshall,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), the Seventh Circuit held that a warrant was supported by probable cause where the application stated only that "[t]he desired inspection is part of an inspection and investigation program designed to assure compliance with the Act in the foundry industry" and that entry was sought "in the course of a National–Local plan designed to achieve significant reduction in the high incidence of occupational injuries and illnesses found in the metalworking and foundry industry." *Id.* at 1341. The court recognized that if particularized cause were required, the Secretary would be forced to accompany every warrant request with "a complete set of updated industry statistics, the validity of these statistics, the rationale for applying a particular index factor to the foundry industry, and the reason for inspecting foundries in lieu of another industry." *Id.* at 1342. The court rejected this as imposing an "unwarranted" burden on the Secretary that was "not intended by the Supreme Court in its decision in *Barlow's." Id.*

Thereafter, the Ninth Circuit in *Stoddard Lumber Co. v. Marshall,* 627 F.2d 984, 988–89 (9th Cir.1980), held that it was sufficient for the warrant application to explain the relevant plan, for the OSHA official to swear in the affidavit that selection was pursuant to the plan, and to cite the above-average national injury rate in the lumber industry. The court stated: "Given this information, it was clear that Stoddard fit within the selection program. Contrary to appellant's contention, the Secretary's failure to provide individual statistics of Stoddard's business [such as the company's accident rate or its position on a worst-first list] does not make the warrant fatally defective." *Id.; see also Donovan v. Enterprise Foundry, Inc.,* 751 F.2d 30, 33 (1st Cir.1984) (statement that foundry had been chosen for inspection in accordance with administrative program for inspections satisfied the administrative probable cause requirement of *Barlow's* ).

Although we recognize that there is contrary authority, *see Brock v. Gretna Machine & Ironworks, Inc.,* 769 F.2d 1110, 1112 (5th Cir.1985) (warrant application must explain why inspection of particular establishment is within program); *In re Establishment Inspection of Urick Property,* 472 F.Supp. 1193, 1195–96 (W.D.Pa. 1979) (some showing of why specific foundry was chosen required); *Marshall v. Weyerhaeuser Co.,* 456 F.Supp. 474, 484 (D.N.J. 1978) ("evidence must be presented with each warrant application to show that the administrative standards are being applied to a particular establishment in a neutral manner"), the cases holding that an application describing an administrative plan and stating that the worksite to be inspected is within that plan is sufficient for a showing of probable cause are persuasive.

■ In this case, however, the Secretary does not rely upon the NEP as the sole basis for establishing probable cause. Respondent's Brief at 47. Apparently OSHA has changed its warrant procedure and therefore the Secretary has little "institutional interest in the court ruling as to whether there was probable cause based on this kind of a warrant application." Transcript of Argument at 29. Instead, the Secretary argues that there was probable cause for the warrant on the facts set forth in the application particular to Penn Steel in light of its past violations and the letter of its counsel stating that at least some such violations had not been abated as Penn Steel had agreed to do.

The two Commissioners who reached the probable cause issue both agreed that the earlier violations provided a rational basis for the selection of Penn Steel as an inspection site. Under the particular facts of this case in which the application referred to both Penn Steel's past violation and the NEP for foundries such as Penn Steel, we agree that the past violations of Penn Steel furnished an ample basis for its selection for early inspection. We therefore reject Penn Steel's contention that there was no probable cause to support the warrant.

Commissioner Rader, who wrote the dissenting opinion, did so on the basis that Penn Steel's earlier violations provided probable cause only for a follow-up inspection limited to matters pertaining to noise and dust, but not for the broad NEP inspection that followed. App. at 59. Because we have concluded that the warrant was validly based at least in part on the NEP, which authorizes a broad scope inspection under section 8(a) of the statute, 29 U.S.C. § 657(a), we find inapposite those cases that limit the scope of warrants based on employee complaints under sec-

tion 8(f) of the Act, 29 U.S.C. § 657(f). *See, e.g., Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1068–70 (11th Cir.1982); *Marshall v. North American Car Co.*, 626 F.2d 320, 324 (3d Cir.1980). We thus conclude that there was probable cause to support the warrant as ·issued.[5]

## B.

### *Ex Parte Warrant*

■ The second ground on which Penn Steel claims the evidence of violations should be suppressed is the ex parte issuance of the warrant. In *Cerro Metal Products v. Marshall*, 620 F.2d 964, 975–78 (3d Cir.1980), this court held that adversary process was required under the earlier version of 29 C.F.R. § 1903.4 which authorized OSHA officials who were refused admission to an inspection site to "take appropriate action, including compulsory process, if necessary." In light of *Cerro Metal*, the Secretary acknowledges that the warrant procedure utilized in this case must be considered defective. Respondent's Brief at 18. If we apply that decision retroactively, it would follow that the inspection was the result of an invalid warrant.

Retroactivity of judicial decisions in civil cases is governed by the three factor test enunciated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The first factor is the one most relevant to this case:

> [T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

404 U.S. at 106, 92 S.Ct. at 355 (citations omitted).[6] The Commission concluded that

---

**5.** We reject Penn Steel's argument that the inspection exceeded the scope of the warrant because the pattern shop and woodworking machinery in that shop were inspected. The Commission considered Penn Steel's objection but determined that the definition of the production area to be inspected included the pattern-making shop. We do not find the Commission's decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706(2)(A) (1982); *see Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir.1985).

**6.** The second and third factors to be considered are whether retrospective operation of the rule would further or retard its operation, and whether retrospective application of the rule would work an "injustice or hardship." 404 U.S. at 106–07, 92 S.Ct. at 355.

*Cerro Metal* overturned "a previously unquestioned and well-grounded practice" and hence that it should not be applied retroactively. App. at 28.[7] We do not agree.

The *Cerro Metal* decision was largely based on the litigation strategy followed by the Secretary in *Barlow's*, where the Secretary suggested to the Supreme Court that 29 C.F.R. § 1903.4 required adversary process once the employer refused entry. *See Cerro Metal*, 620 F.2d at 976–78. Because the Supreme Court's opinion in *Barlow's* had accepted the government's suggested interpretation of section 1903.4, we chose in *Cerro Metal* to conclude that section 1903.4 did not empower OSHA to seek ex parte warrants. *Id.* at 979.

The warrant in this case issued seven months after the government's Statement of Jurisdiction was filed in the Supreme Court in *Barlow's*. It was this Statement of Jurisdiction which provided part of the basis for our decision in *Cerro Metal* that the government had adopted a litigation strategy in *Barlow's* "to characterize the regulation as providing for adversary process." *Cerro Metal*, 620 F.2d at 976. Therefore, we cannot say under the *Chevron* test that this court's decision in *Cerro Metal*, which followed the government's own litigation strategy, overruled "clear precedent on which litigants may have relied." For the same reason, it would appear that we must view the *Cerro Metal* holding that adversary process was required as "foreshadowed" to the Secretary in light of his argument in *Barlow's*.

Thus, under the *Chevron* test we conclude that we must apply retroactively our holding in *Cerro Metal* that ex parte warrants were invalid under rules existing at the time the warrant in this case was issued. As a consequence, the ex parte warrant used in this case was invalid.

## IV.

### *Exclusionary Rule*

The parties have taken extreme positions on opposing sides of the suppression issue. Penn Steel argues that the inspection pursuant to an ex parte warrant was invalid under the statute and denied it due process and equal protection because other businesses which declined consent were provided with advance notice and the opportunity to object. It claims therefore that all evidence from the inspection should be suppressed.

We have previously declined to express any opinion on the "sharply contested question whether the exclusionary rule applies to OSHA enforcement." *Babcock and Wilcox Co. v. Marshall*, 610 F.2d 1128, 1139 (3d Cir.1979).[8] The Secretary argues that we are compelled to hold that the exclusionary rule is inapplicable in OSHA proceedings because the Supreme Court held in *INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), that the exclusionary rule is inapplicable in deportation proceedings. The Court decid-

---

**7.** The Commission applied the standards for retroactivity in criminal cases set out in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). The *Johnson* "clear break with the past" rule was recently overruled in *Griffith v. Kentucky*, — U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), where the Court held that a decision announcing a new rule for conduct in criminal prosecutions is to be applied retroactively to all cases pending on direct review. The Court noted the continuing vitality of *Chevron* in civil cases. — U.S. at ——, n. 8, 107 S.Ct. at 713 n. 8.

**8.** Courts considering whether the exclusionary rule is applicable to OSHA cases prior to the decision in *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), have reached varying conclusions. *See Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061 (11th Cir.

1982) (holding exclusionary rule applicable in civil OSHA proceedings); *Savina Home Industries, Inc. v. Secretary of Labor*, 594 F.2d 1358, 1363–64 (10th Cir.1979) (finding exclusionary rule applicable in OSHA proceedings but holding that it should not be applied retroactively to pre-*Barlow's* warrantless search); *Todd Shipyards Corp. v. Secretary of Labor*, 586 F.2d 683, 689–90 (9th Cir.1978) (suggesting that the exclusionary rule would not be applicable to OSHA proceedings, but not reaching the issue because court found that rule should not be applied retroactively to pre-*Barlow's* warrantless search); *see also Donovan v. Federal Clearing Die Casting Co.*, 695 F.2d 1020 (7th Cir.1982) (applying good faith exception without specifically addressing whether exclusionary rule should ever apply).

ed that "[a] deportation proceeding is a purely civil action to determine eligibility to remain in this country" rather than a proceeding to punish an unlawful entry. *Id.* at 1038, 104 S.Ct. at 3483. Therefore, it applied the balancing test set out in *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), which requires the court "to weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs." *Lopez–Mendoza,* 468 U.S. at 1041, 104 S.Ct. at 3484. The cost of excluding illegally obtained evidence would be to allow someone to remain unlawfully in the country; there was little deterrent value in exclusion because the issue arose rarely and the INS had its own comprehensive scheme for deterring Fourth Amendment violations. Therefore, the Court held that the costs of excluding illegally obtained evidence outweighed any potential benefits.

The Secretary emphasizes the Court's statement in *Lopez–Mendoza* that "no one would argue that the exclusionary rule should be invoked to prevent an agency from ordering corrective action at a leaking hazardous waste dump if the evidence underlying the order had been improperly obtained.... On the rare occasions that it has considered costs of this type the Court has firmly indicated that the exclusionary rule does not extend this far." *Id.* at 1046, 104 S.Ct. at 3487 (citations omitted).

The Secretary argues that we should follow the decision of the Fifth Circuit in *Smith Steel Casting Co. v. Brock,* 800

F.2d 1329, 1334 (5th Cir.1986), insofar as it held that the exclusionary rule cannot be invoked "to prevent the Secretary of Labor from ordering correction of OSHA violations involving unsafe or unhealthy working conditions." Not unexpectedly, he also argues that the *Smith* court erred in holding the exclusionary rule applicable to OSHA's assessment of monetary penalties for violations.[9]

■ We need not, in this case, make the definitive ruling sought by the Secretary on the applicability of the exclusionary rule in all OSHA proceedings. We might be faced with that issue were the evidence the fruit of an unconstitutional warrant or inspection, as in *Lopez–Mendoza.* Although Penn Steel seeks to raise the ex parte warrant procedure to the level of a constitutional or statutory violation, it was nothing more than a violation of the Secretary's own regulation which, in fact, has since been changed to provide for ex parte warrants. *See* 29 C.F.R. § 1903.4(d) (1986).

The Supreme Court made clear in *Barlow's* that there is neither a constitutional nor a statutory impediment to an ex parte warrant.[10] Moreover, we have rejected Penn Steel's other constitutional objections by holding that the warrant was supported by probable cause and that the search was conducted within the scope of the warrant.

The Supreme Court has made a distinction between application of the exclusionary rule when there has been a constitutional violation and when there has only

**9.** Judge Garth would not follow the Fifth Circuit's decision in *Smith Steel Casting Co. v. Brock,* 800 F.2d 1329 (5th Cir.1986), insofar as that decision invokes the exclusionary rule to preclude the imposition of monetary penalties for OSHA violations. Because in this case a $5,000 penalty had been assessed against Pennsylvania Steel Foundry, it is his position that we must address this issue and he would hold that the exclusionary rule does not extend to either OSHA enforcement actions to correct violations or to the imposition of penalties by OSHA where violations have occurred. While the effect of the court's opinion is to reject the application of the exclusionary rule to both the sanctions and the violations in this case, Judge Garth believes we should do so explicitly, since the Fifth Circuit has expressly distinguished between the two.

**10.** The Court stated that it is not "immediately apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available for the Secretary to seek an *ex parte* warrant and to reappear at the premises without further notice to the establishment being inspected." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 319–20, 98 S.Ct. 1816, 1823–24, 56 L.Ed.2d 305 (1978). It also stated that "a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent would appear to be as much within the Secretary's power as the regulation currently in force and calling for 'compulsory process.'" *Id.* at 320 n. 15, 98 S.Ct. at 1824 n. 15.

been a violation of an agency regulation that is not itself mandated by the Constitution. We believe that distinction governs our decision in this case.

In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the defendant, who was being prosecuted for bribing an IRS agent, sought to suppress the evidence of conversations which had been taped in violation of the IRS' own regulation prohibiting "consensual electronic surveillance" between taxpayers and IRS agents unless appropriate prior authorization is obtained. The Court held that suppression of the tape recordings of such conversations and the testimony of agents who monitored them was not required. The Court concluded that the violation of the regulations did not implicate any constitutional question and that therefore its "precedents enforcing the exclusionary rule to deter constitutional violations provide no support for the rule's application in this case." *Id.* at 755, 99 S.Ct. at 1473.

Our reliance on *Caceres* as precedent is supported by the interpretation other circuits have given that opinion. In *United States v. Nuth*, 605 F.2d 229, 233–34 (6th Cir.1979), evidence was obtained by IRS agents in violation of agency rules that required *Miranda* warnings in situations not constitutionally mandated. The Sixth Circuit held that *Caceres* required that the evidence so obtained should not be suppressed. *Accord United States v. Snowadzki*, 723 F.2d 1427, 1430–31 (9th Cir.) (citing *Caceres* for proposition that "[a]bsent unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations, without also infringing on constitutional or statutory rights"), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984); *United States v. Appoloney*, 761 F.2d 520, 522 (9th Cir.) (same), *cert. denied*, 474 U.S. 949, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985); *see also United States v. Equitable Trust Co.*, 611 F.2d 492, 500 (4th Cir.1979) (dictum) (same). Indeed, some opinions have gone further, suggesting that under *Caceres* even statu-

tory violations may be spared the exclusionary sanction. *United States v. Hensel*, 699 F.2d 18, 29–30 (1st Cir.) (reading *Caceres* as holding "that lack of statutory authority and the contravention of a regulation do not automatically invoke the exclusionary rule"), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *see also United States v. Mangieri*, 694 F.2d 1270, 1284 n. 15 (D.C.Cir.1982) (citing *Caceres* for proposition that suppression may not be appropriate remedy "[e]ven if the government had violated a statute"). It follows that we are not required to suppress the evidence obtained of Penn Steel's OSHA violations.

In *Caceres*, the Supreme Court suggested that a court retains discretion in appropriate circumstances to exclude evidence obtained in violation of an agency regulation. Nothing in the circumstances before us convinces us that this is a case in which such exclusion would be appropriate. There would be only marginal deterrent value from applying the exclusionary rule because, as we noted above, the agency's regulation now provides for ex parte warrants. Also, internal agency rules operate to deter Fourth Amendment violations by agency officials.[11] *See Lopez–Mendoza*, 468 U.S. at 1044–45, 104 S.Ct. at 3486; *Caceres*, 440 U.S. at 756, 99 S.Ct. at 1474.

On the other hand, the costs of applying the exclusionary rule in this type of case would be substantial. Relevant probative evidence would be lost. Penn Steel was cited for 298 violations of health and safety standards ten years ago. The effect of exclusion would be to require OSHA to begin the inspection procedure all over again to the possible detriment of employees exposed to ongoing workplace hazards on a continuing basis. We conclude that the balance of benefits against social costs requires us to decline to apply the exclusionary rule when the only procedural defect was obtaining an ex parte warrant

11. Such rules include not only the requirement of a warrant issued by a United States magistrate but also a requirement that warrant appli-

cations be approved by OSHA Area Directors after consultation with the Regional Solicitor of the Labor Department.

before a regulation permitting its use was promulgated.[12]

## V.

### Settlement Agreement

Penn Steel's final contention is that the Commission improperly enforced the settlement agreement on the 240 nonlitigated items. The Commission treated Penn Steel's statement of withdrawal as a motion to withdraw, and held that although the settlement agreement, both by its terms and Commission precedent, was not final prior to Commission approval, it should be enforced because of the substantial prejudice to the Secretary that would be caused by Penn Steel's withdrawal and the late date at which Penn Steel chose to withdraw.

We reject the Secretary's contention that the Settlement Agreement was final when signed.[13] There may be more force in his argument that under this court's decision in *Marshall v. Sun Petroleum Products Co.*, 622 F.2d 1176 (3d Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), the Commission was "powerless" to grant Penn Steel's motion to withdraw. However, in this case we need not decide if the Commission would have had the power to permit Penn Steel to withdraw because the Commission chose not to.

Penn Steel argues that equity requires that it be allowed to withdraw from a settlement agreement prior to Commission approval because the Secretary is allowed to make such a withdrawal. The Secretary's

authority to withdraw, however, is premised on his special role as the enforcer of the Act. *See Sun Petroleum*, 622 F.2d at 1187; *see also Cuyahoga Valley Railway Co. v. United Transportation Union*, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985) (per curiam) (holding that Secretary has unreviewable discretion to withdraw citation over union's objection).

██ Even if the Commission had the power to permit withdrawal from the Settlement Agreement, it retained the discretion to require adherence to the Settlement. It concluded that the equities weigh heavily against allowing Penn Steel to withdraw. The decision that it made cannot be characterized as arbitrary or an abuse of discretion. Allowing Penn Steel to withdraw would impede the Secretary's use of settlements as a means for enforcing the Act in other cases.

## VI.

### Conclusion

In summary, we have held that the Commission's action is not invalid for want of a quorum, that the warrant was supported by probable cause and that the scope of the inspection did not exceed that permitted by the warrant, that the ex parte warrant was invalid under our decision in *Cerro Metal* which is to be applied retroactively, and that the exclusionary rule should not be applied to suppress evidence of violations resulting from a search warrant that was invalid only under a now outdated regulation. We have also held that Penn Steel is

---

12. In light of our decision not to apply the exclusionary rule we do not reach the Secretary's argument that suppression would be inappropriate under the good faith rule of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There is also no need for this court to address the distinction made by the Fifth Circuit between application of the exclusionary rule for purposes of a monetary penalty but not for injunctive relief. *See Smith Steel Casting Co. v. Brock,* 800 F.2d 1329 (5th Cir. 1986). Although we are always interested in the views of our colleague Judge Garth, his views set forth in note 9 *supra* rejecting the *Smith* court's analysis are dictum. Judge Garth stresses that there was a monetary penalty imposed here. However, the point he seeks to make is not relevant here because we have decided that

the exclusionary rule should not be applied at all when the only violation was the use of an ex parte warrant.

13. The Commission's conclusion that the Agreement did not become "final" until approved by it is supported by the language of the Settlement Agreement which states, in part: "the parties request that the stipulation be approved and become a final order of the Commission." App. at 86. The Agreement specifically reserves the rights of the parties to contest before the Commission the fifty-eight litigated items and states: "The preliminary decision will become effective on the date this stipulation becomes a final order of the Commission." *Id.* at 80.

bound by the terms of the settlement agreement on the non-litigated items.

Accordingly, we will deny Penn Steel's Petition to Review the Commission's Order dated August 27, 1986.