TRI–STATE STEEL CONSTRUCTION, INC., et al., Petitioners,

v.

OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, et al., Respondents.

No. 92–1614.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1994.

Decided June 17, 1994.

Rehearing Denied Aug. 22, 1994.

Kent W. Seifried, Newport, KY, argued the cause, and filed the briefs, for petitioners.

John Shortall, Atty., U.S. Dept. of Labor, Washington, DC, argued the cause, for respondents. With him on the brief was Joseph M. Woodward, Associate Sol., Occupational Safety and Health, and Barbara Werthmann, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC.

Before MIKVA, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

MIKVA, Chief Judge:

The Occupational Safety and Health Administration ("OSHA") conducted two related inspections of a multi-employer bridge and highway construction project on which Petitioners, National Engineering & Contracting Company ("National") and its wholly-owned subsidiary Tri–State Steel Construction Company, Inc. ("Tri–State"), were subcon-

tractors. OSHA cited Petitioners for violating several safety and health standards established pursuant to the Occupational Safety and Health Act of 1970. 29 U.S.C. §§ 651–678 (1988 & Supp.1993). Petitioners contested the citations, alleging, *inter alia,* that OSHA's inspections of the construction site constituted unreasonable searches within the meaning of the Fourth Amendment.

After a hearing on the merits, an administrative law judge ("ALJ") held the searches to be constitutionally permissible. The Occupational Safety and Health Review Commission ("Commission") affirmed the ALJ's conclusion, and Petitioners filed this petition for review. Because Petitioners lacked a reasonable expectation of privacy in the open areas of their construction site and OSHA inspected other areas of the site pursuant to a valid administrative warrant, we deny the petition for review.

## I. Background

In 1989, National and Tri–State worked as subcontractors on a major reconstruction and rehabilitation project known as Project 8. Project 8 involved the restoration of 36 bridges in a four-mile stretch where three major highways converged in Cincinnati, Ohio. To promote both the safety of Project 8 workers and the convenience of area drivers, the State of Ohio developed, and the project's general contractor implemented, a traffic control plan to reroute traffic around the construction area. Petitioners bore no responsibility for designing or implementing the plan.

On the evening of April 27, 1989, the general contractor, acting in accordance with the traffic control plan, set barrels in a V-like formation around Petitioners' worksite area on Fort Washington Way, a four-lane highway intersecting the project area. The barrels isolated the highway's two center lanes by rerouting traffic to the outer left- and right-hand lanes. The right lane channeled traffic north toward Dayton, Ohio; the left lane channeled traffic south into Kentucky. Once cars split off at the "V," they had no further opportunity to cross back to the other lane of traffic.

On April 28th, Fort Washington Way motorists found themselves channelled in directions in which they did not want to go. Because the barrels were set fifty feet apart, motorists were able to cut between them and across the work area in order to reach their desired lanes. When the criss-crossing traffic problem first began, Petitioners contacted the State of Ohio to request police protection for their workers. The State directed the general contractor to reposition the barrels by placing them at 25–foot intervals. When this proved ineffective, Petitioners placed debris and other items between the barrels to discourage traffic from cutting through the work area. When the criss-crossing problem persisted, an agent of Petitioners' iron workers filed a § 8(f)(1) Complaint with OSHA detailing the nature and location of the safety hazard to which site employees were exposed. 29 U.S.C. § 657(f)(1).

OSHA promptly commenced an inspection of the specific area of Fort Washington Way described in the Complaint. On May 4, 1989, without seeking an administrative inspection warrant, OSHA dispatched a compliance officer and trainee to the construction site. The OSHA officers drove between the barrels and parked their vehicle in the cordoned area of the highway. When Tri–State representatives asked them to leave the OSHA officers refused, claiming that the condoned area was public property to which they had a right of access. Shortly thereafter, Petitioners' attorney arrived and advised the OSHA officers to cease their inspection and to obtain an administrative inspection warrant if they wished to continue.

The OSHA officers remained on-site for the remainder of the afternoon. The compliance officer took measurements of the Fort Washington Way construction site and took statements from on-site employees. The trainee videotaped traffic flow at the site. The compliance officer returned to the site the next day to ensure that a policeman was present. On May 8th, the general contractor placed barrels at 10–foot intervals around Petitioners' worksite and strung orange plastic meshing between them. When the compliance officer returned to the construction

site on Monday, May 8th, he confirmed that the traffic control problem had abated.

During his three day inspection of Fort Washington Way, the compliance officer allegedly observed two safety hazards in addition to the moving vehicular traffic—improperly used and stored flammable gases and improperly used welding rods. Based on these observations, OSHA sought to expand its inspection to encompass the full four miles of elevated roads and bridges that defined Project 8. Both Petitioners and the general contractor objected to this decision and demanded that OSHA obtain an administrative inspection warrant before expanding the scope of its inspection.

Citing the multiple safety hazards it had observed in its limited inspection of Petitioners' construction site, OSHA applied for and obtained an administrative search warrant for all of Project 8. From May 10–16, 1989, OSHA conducted a full-scale inspection of Project 8 and cited Petitioners for several additional safety and health standards violations it observed. Petitioners contested the citations before an administrative law judge arguing that both the warrantless inspection on May 4th and the more comprehensive warrant-based inspection on May 10–16 violated the Fourth Amendment. After a hearing on the merits, the ALJ held the inspections to be constitutionally permissible. The ALJ upheld OSHA's warrantless inspection because the cordoned area of Fort Washington Way was a public right-of-way and the inspection encompassed only those aspects of the construction "which were in plain view of all." Finding the additional safety and health standards violations that OSHA uncovered in its initial inspection to be a valid basis upon which to issue an administrative search warrant, the ALJ upheld OSHA's warrant-based inspection as well.

On appeal, the Commission rejected the ALJ's reasoning regarding the initial search, but upheld the constitutionality of OSHA's inspections. Because the compliance officers were "trespassing in an area that was open only to the Respondents' employees," the Commission determined that the inspection could not be justified under the "plain view" doctrine. Nonetheless, the Commission upheld OSHA's warrantless inspection of Petitioners' worksite because Petitioners' construction site fell within the "open fields" exception to the Fourth Amendment. The Commission affirmed the ALJ's conclusion that OSHA had inspected the entirety of Project 8 pursuant to a valid administrative search warrant. Petitioners seek review of these determinations.

## II. Discussion

### A. OSHA's Warrantless Inspection

 Whether a governmental search or seizure implicates the Fourth Amendment usually involves a two-fold analysis. To come under the rubric of the Fourth Amendment, the subject of the search must show that it "has manifested a subjective expectation of privacy in the object of the challenged search." *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986). In addition, society must be "willing to recognize that expectation as reasonable." *Id.* Whether a party has manifested a subjective expectation of privacy is a question of fact, reviewed under the clearly erroneous standard. *United States v. Welliver*, 976 F.2d 1148, 1151 (8th Cir.1992). Whether that subjective expectation is objectively reasonable is a matter of law subject to *de novo* review. *Id.* Because we conclude that the contractual arrangements between Petitioners, the general contractor, and the federal government preclude Petitioners from establishing any reasonable expectation of privacy in the open areas of Project 8, we need not assess the subjective element of Petitioners' claimed privacy interest. Similarly, in disposing of Petitioners' claims through conventional Fourth Amendment analysis, we need not reach the more novel question of whether Petitioners' construction site falls within the Fourth Amendment's "open fields" exception.

The contract between the State of Ohio and the general contractor provides that "[w]hen the United States Government pays all or any portion of the cost of a project, the Federal laws and the rules and regulations made pursuant to such laws must be observed by the Contractor, and the work shall be subject to the inspection of the appropri-

ate Federal agency." That federal funds were used in Project 8 is undisputed. Because National's subcontract with the general contractor "specifically incorporated ... the Principal Contract between the Owner and the Contractor," National and, derivatively, Tri–State were on notice that "appropriate" federal inspectors could enter the construction site without further consent from Petitioners. In addition, the State of Ohio Department of Transportation had contractually reserved the right to enter Project 8. We find the contractual right of entry that Petitioners and the general contractor afforded "appropriate federal inspectors" and the State of Ohio to be incompatible with any expectation of privacy that Petitioners may have manifested in the open areas of Project 8. Accordingly, we uphold OSHA's warrantless inspection of Petitioners' construction site.

Petitioners miss the Fourth Amendment mark in arguing that OSHA is not the "appropriate" federal agency to which the contract refers. The reasonableness of Petitioners' subjective expectation of privacy cannot turn on which governmental agency is empowered to enforce Petitioners' compliance with safety and health standards. Whether it be OSHA or the Federal Highway Administration, the reasonableness of Petitioners' subjective expectation of privacy is unchanged. Moreover, although Petitioners challenge OSHA's jurisdiction over Project 8 indirectly, through their Fourth Amendment claim, they do not do so directly. Consequently, we leave undisturbed the Commission's finding that OSHA was the appropriate federal agency to enforce safety and health standards at the construction site.

### B. OSHA's Warrant-based Inspection

 We turn now to the validity and scope of OSHA's administrative search warrant. OSHA does not contest Petitioners' assertion that the contractual right of entry that State and federal inspectors enjoyed on Project 8 lands did not extend to the materials and effects over which Petitioners had exclusive dominion. Consequently, Petitioners retained a legitimate expectation of privacy in those areas and aspects of their con-

struction site that lay beyond plain view. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978) (recognizing the businessperson's "constitutional right to go about his business free from unreasonable official entries upon his private commercial property"). Although the State of Ohio consented to OSHA's expanded search of Project 8, its consent could not validly extend to property and effects over which it lacked dominion. *Cf. Donovan v. A.A. Beiro Constr. Co.*, 746 F.2d 894, 901–02 (D.C.Cir.1984) (explaining that third-party "authority to consent to search of a common area extends to most objects in plain view, [but] it does not automatically extend to the interiors of every enclosed space within the area"). OSHA concedes that its search encompassed such property. Accordingly, the constitutionality of OSHA's expanded inspection of Project 8 turns on the validity of the administrative search warrant that OSHA procured. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

 To obtain a valid search warrant, OSHA must establish administrative probable cause in one of two ways. First, OSHA may demonstrate "specific evidence of an existing violation." *Marshall v. Barlow's*, 436 U.S. at 320, 98 S.Ct. at 1824. Alternatively, OSHA can show that "'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" *Id.* citing *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967). OSHA's warrant application relief on both specific evidence of current violations and the Secretary's administrative plan to establish probable cause to search Project 8 in its entirety. The Commission rightly found that "a full-scope inspection was called for under the provisions of a general administrative plan for the enforcement of the Act."

Under the terms of OSHA's then-effective administrative plan, a § 8(f)(1) Complaint inspection in a low-hazard industry could be expanded to cover the entire worksite if the Complaint inspection led to "'information indicating the likelihood of serious hazards in

other portions of the [workplace].'" The Commission found that OSHA's initial, Complaint-based inspection "provided it with ample reason to believe that it was likely to discover other serious hazards" in the remaining areas of the highway rehabilitation project. We have no reason to disturb that finding.

Although Petitioners rely on *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061 (11th Cir.1982), to argue that OSHA may not rely on a Complaint about specific violations in a delimited area to establish administrative probable cause to conduct a full-scale worksite investigation, they misapply *Donovan* to the facts of this case. The Commission did not find that OSHA's May 4th Complaint inspection itself justified the full-scale investigation of Project 8. Rather, the Commission determined that OSHA's administrative plan justified a more expansive site inspection because, in the course of investigating the Complaint, OSHA observed multiple, potentially serious safety violations beyond those mentioned in the Complaint.

Petitioners further argue that the administrative search warrant was invalid because it was based upon an application in which OSHA "knowingly and intentionally or with reckless disregard for the truth" made material "misrepresentations." Specifically, Petitioners contend that OSHA's application failed to inform the magistrate that the traffic safety problem at the worksite had abated and that Petitioners expressly objected to OSHA's warrantless search. Although Petitioners believe this information to be "critical" to any determination of administrative probable cause, the Commission found, and we agree, that they "do not undercut the Secretary's showing of administrative probable cause for a full-scope investigation." Notwithstanding OSHA's failure to mention that the site's traffic safety hazard had abated, OSHA's warrant application contained ample evidence of additional safety hazards at the Project 8 construction site.

## III. Conclusion

The contractual right of entry that Petitioners and the general contractor afforded "appropriate federal inspectors" and the State of Ohio renders unreasonable any expectation of privacy that Petitioners may have manifested in the open areas of the Project 8 construction site. OSHA's warrantless inspection of the site was therefore constitutional. OSHA conducted its expanded inspection of Project 8 pursuant to a valid administrative search warrant. The petition for review is

*Denied.*

STEPHEN F. WILLIAMS, Circuit Judge, concurring in the result:

I agree with the court that Tri–State had no "reasonable expectation of privacy", and therefore no 4th Amendment claim, in the entirely open areas of the construction site. In my view, however, the contract between the State of Ohio and the general contractor (incorporated into Tri–State's contract by reference) is not the explanation. Rather, it is the completely open character of the area involved, fully exposed to the view of the thousands of motorists who passed by the site—itself only two highway lanes wide. See *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). *Dunn* makes reasonably clear, I think, that the "open fields" doctrine that it applied is simply a special case of the more general doctrine that a reasonable expectation of privacy is necessary for a successful 4th Amendment claim. See *id.* at 300, 107 S.Ct. at 1139 (invoking "open fields" doctrine and observing that the extent of the "curtilage" of a house protected by the 4th Amendment "is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself"). Tri–State could not have a reasonable expectation of privacy in an area that anyone driving through Cincinnati could at will peer into—and *through*.

I think the court implicitly concedes that this is what drives the outcome when it acknowledges, as did OSHA, that whatever rights of entry were established by the contracts did not extend to the areas concealed from "plain view". Maj.Op. at 177. Nothing in the contracts so limits them. In fact, Tri–State's objections to reliance on the contracts seem to me quite persuasive. Surely agree-

ment to inspection by $A$ should not normally be read as a blanket abandonment of expectations of privacy against the invasions of $B$ through $Z$; to say that it does is to create a rather astonishing gap in 4th Amendment protections. Further, nothing in the contract, which simply warns that the site "shall be subject to inspection of the appropriate Federal agency", says that such inspections may occur without observance of ordinary legal norms.