**NATIONAL ENGINEERING & CONTRACTING COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Robert B. Reich, Secretary of Labor, United States Department of Labor, Respondents.**

No. 93–1468.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1994.

Decided Feb. 3, 1995.

Kent W. Seifried, argued the cause, for the petitioner.

John Shortall, Atty., Dept. of Labor, argued the cause for the respondents. On brief were Joseph M. Woodward, Associate Sol., and Barbara Werthmann, Counsel, Dept. of Labor.

Before BUCKLEY, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

National Engineering & Contracting Company (National) petitions for review of a $400 fine levied against it by the Occupational Safety and Health Administration (OSHA) after an OSHA inspector found exposed metal bars at one of its construction sites. OSHA also cited National after its inspector discovered an extension cord stripped of insulation and an ungrounded electrical plug at the same location. National contends that the warrant used to obtain entry to its worksite was not based on probable cause and that the Secretary of Labor (Secretary) failed to meet his burden of proof in the ensuing administrative proceeding. We conclude that probable cause supported OSHA's warrant and that substantial evidence supported OSHA's determination of liability. We therefore deny the petition.

## I. BACKGROUND

OSHA conducts a routine inspection program under a written policy to monitor compliance with workplace health and safety standards promulgated by the Secretary under the Occupational Safety and Health Act.[1] OSHA Field Operations Manual, Instruction CPL 2.45B CH–1 at II–1 (1990), *reprinted at* Joint Appendix (JA) 13. It inspects construction worksites on a list randomly generated by a computer owned and operated by the University of Tennessee. Based on criteria whose neutrality National does not challenge the computer selects worksites from a commercially published list of current construction projects known as "Dodge reports." *Id.*[2] On its application for an inspection warrant OSHA stated that the computer had chosen a bridge construction site along U.S. Route 50 at Cleves, Ohio (near Cincinnati) as one of the sites for inspection in April 1992. JA 7. At the worksite, National was the general contractor for the state of Ohio's Department of Transportation on the latter's bridge construction project.

OSHA assigned compliance officer John Collier to inspect National's worksite. Collier applied for a warrant from a magistrate judge of the United States District Court for the Southern District of Ohio. The warrant application indicated that OSHA planned to conduct its inspection as part of its inspection and investigation program and included a copy of OSHA's written policy as an exhibit. JA 6. Collier also attached a copy of the Dodge report for the Cleves construction site. JA 57. He attested that "[i]n accordance with OSHA regulation 29 C.F.R. [§] 1903.4 an anticipatory inspection warrant is requested because the general contractor at the inspection worksite scheduled, National Engineering & Contracting Company, has a stated and written policy forbidding government inspection of their worksites without a valid inspection warrant." JA 8.

The magistrate judge issued a warrant on April 27, 1992 to inspect the Cleves site. Because of scheduling difficulties, another inspector, James Denton, actually carried out the inspection three days later, April 30. National's superintendent, William Delsignore, arrived at the site 90 minutes after Denton. Denton showed his credentials but did not mention the warrant. The National

---

**1.** The Secretary is authorized by 29 U.S.C. § 657(a) to enter "without delay and at reasonable times any factory, plant, establishment, construction site, or other area" for the purposes of inspection and investigation. Under 29 C.F.R. § 1903.7(a) "inspections shall take place at such times and in such places of employment as the Area Director [of OSHA] or the Compliance Safety and Health Officer may direct."

**2.** OSHA's written policy describes the selection process in detail. OSHA Field Operations Manual, Instruction CPL 2.45B CH–1 at II–26–30 (1990), *reprinted at* JA 38–42. The University of Tennessee's Construction Resources Analysis Department prepares an inspection list for each of OSHA's area offices in a given month. The computer randomly selects worksites contained in the Dodge reports that meet certain criteria specified by the director of each area office. The criteria include a minimum dollar value of the construction project, a minimum size in square feet, the length of time the project is likely to last, the completion stage of the project and the type of construction project. *Id.* at II–26, *reprinted at* JA 38.

representative did not allow him to enter; instead he consulted with two other company officials. One hour later, National asked Denton to wait until it could bring its lawyers to the site. After consulting his supervisor, Denton refused. He then served the warrant on Delsignore and began his inspection. When Denton returned to conduct a second day of inspection, National presented him with a form notice of protest regarding the issuance and validity of the warrant. JA 122.

Denton found six violations of regulatory workplace standards, three of which are at issue here. First, he saw a carpenter working near a line of exposed vertical steel bars known as rebar. Although the bars were away from the main work area, Denton determined that they were likely to pose an impalement hazard to workers.[3] Second, Denton found an extension cord located in the middle of the bridge from which the outer insulation cover had pulled loose from one end, leaving the inner wires (which were themselves insulated) exposed about one-half inch. Denton concluded that the cord posed an electrocution hazard because the inner wires could pull loose while being used.[4] Third, Denton found that a fax machine in an office trailer had been improperly plugged into the power outlet. The three-pronged plug had been plugged into a two-prong adapter before being put into the socket, thus removing the grounding path.[5] Denton cited National for all three violations.[6]

█ National contested the citations before an administrative law judge (ALJ) act-

ing for the Occupational Safety and Health Review Commission (Commission or OSHRC). Although National contended that the warrant was invalid, the ALJ determined without extended discussion that it had been properly issued pursuant to OSHA's administrative plan. JA 190–91. On the merits, National declined to present evidence and moved for a directed verdict in its favor after OSHA presented its case. JA 192. The ALJ found that the extension cord and fax machine plug violations were not serious and assessed no penalty. JA at 192–98, 201. The ALJ found that the rebar violation was "serious" and fined National $400. JA 200. The Commission declined discretionary review of the ALJ's decision, which became final on June 7, 1993. JA 209.[7]

## II. DISCUSSION

National's petition challenges the warrant and the sufficiency of the evidence supporting the ALJ's findings. As to the warrant, National argues that OSHA Inspector Collier did not include information demonstrating specifically how National was chosen for inspection under OSHA's administrative plan, he lacked personal knowledge of some statements in the warrant application and he misrepresented one fact included in the application. As a result, it contends, the warrant was not supported by probable cause.

█ The Supreme Court has explained that the showing necessary to establish probable cause for a routine inspection conducted

---

**3.** 29 C.F.R. § 1926.701(b) provides "[a]ll protruding reinforcing steel, onto and into which employees could fall, shall be guarded to eliminate the hazard of impalement."

**4.** 29 C.F.R. § 1926.405(g)(2)(iv) provides "[f]lexible cords shall be connected to devices and fittings so that strain relief is provided which will prevent pull from being directly transmitted to joints or terminal screws."

**5.** 29 C.F.R. § 1926.404(f)(6) provides "[t]he path to ground from circuits, equipment, and enclosures shall be permanent and continuous."

**6.** Because the extension cord was in an open area, Denton also cited National for a violation of 29 C.F.R. § 1926.20(b)(3), which provides that material not in compliance with OSHA regulations "shall either be identified as unsafe by tagging or locking the controls to render them

inoperable or shall be physically removed from its place of operation."

**7.** OSHA issues a citation on behalf of the Secretary if an inspector's report establishes that a violation of the Occupational Safety and Health Act has occurred. 29 U.S.C. § 658(a); 29 C.F.R. § 1903.14(a). An employer contesting a citation is entitled under 29 U.S.C. § 659(c) to an evidentiary hearing before an ALJ at which the Secretary bears the burden of establishing the alleged violation. *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 446, 97 S.Ct. 1261, 1264, 51 L.Ed.2d 464 (1977). Under 29 U.S.C. § 661(j) the ALJ's report becomes the final order of the OSHRC unless a Commission member directs that the report be reviewed by the Commission within thirty days of its issuance.

as part of a regulatory compliance program is not as stringent as that required of a search for evidence of crime. "For purposes of an administrative search ... probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978) (footnote omitted) (quoting *Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1735–36, 18 L.Ed.2d 930 (1967)). To establish probable cause under *Marshall,* then, OSHA must demonstrate only that its inspection program is a neutral one and that, using those criteria, it selected National for inspection. *In re Trinity Indus., Inc.,* 876 F.2d 1485, 1490 (11th Cir. 1989). It is not disputed that OSHA's inspection program is a neutral one. In *Marshall,* the Supreme Court concluded:

> A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

*Id.* 436 U.S. at 321, 98 S.Ct. at 1825. As Collier attested in the warrant application, the inspection was to be conducted in accordance with OSHA's written policy, which is based primarily on the factors noted approvingly by the Supreme Court in *Marshall.* JA 7. *See In re Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1341–43 (7th Cir.) (finding probable cause established by similar attestation), *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). National complains instead that the warrant application did not manifest how National in particular was chosen for inspection under the program. While we have not previously addressed this question, other circuits have concluded that OSHA establishes probable cause by simply attesting that the worksite fits within the program. *Pennsyl-*

*vania Steel Foundry & Mach. Co. v. Secretary of Labor,* 831 F.2d 1211, 1214–16 (3d Cir.1987) (citing *Gilbert & Bennett*); *Stoddard Lumber Co. v. Marshall,* 627 F.2d 984, 988–89 (9th Cir.1980); *Donovan v. Enterprise Foundry, Inc.,* 751 F.2d 30, 33 (1st Cir.1984); *Trinity,* 876 F.2d at 1492–93 & n. 4. We find these cases persuasive and fully consistent with the Supreme Court's reasoning in *Marshall.*

■ National relies on the holding in *Brock v. Gretna Mach. & Ironworks, Inc.,* 769 F.2d 1110, 1112 (5th Cir.1985), that a warrant application must include documents demonstrating the means by which a specific inspection target was selected under OSHA's program. We decline to follow *Brock* in this regard and note, echoing the Eleventh Circuit, "no other circuit requires OSHA to append such documents to its warrant applications." *Trinity,* 876 F.2d at 1492. Moreover, the Fifth Circuit subsequently clarified its view, holding that

> [t]he test is whether the magistrate can be satisfied that the target establishment was placed on the register by an application of the plan's specific, neutral criteria. The absence of an encoded establishment list will only be fatal to a warrant application where the target company can make a factual showing that it was placed on the list for reasons other than the application of specific, neutral criteria.

*Industrial Steel Prods. Co. v. OSHA,* 845 F.2d 1330, 1337 (5th Cir.1988) (footnote omitted). Collier's warrant application provided sufficient information to establish probable cause under this formulation, which is in the main consistent with the other circuits. Equally important, National has not alleged that it was selected for inspection by any means other than application of neutral criteria.

■ National also claims that the warrant was invalid because Collier did not have personal knowledge of each factual assertion in the warrant application. We find National's claim "unduly technical and restrictive" because "the affiants are entitled to rely on the actions and observations of their fellow OSHA personnel to supplement their own personal knowledge." *Id.* at 1335. Its argument that the warrant is void because Collier

falsely represented that National had a written policy forbidding government inspection without a warrant is similarly unpersuasive. Although the record confirms that National's written policy was to cooperate with inspectors, JA 121, we believe that Collier's mischaracterization of National's policy does not defeat the validity of the warrant because it does not undercut any of the attestations supporting a finding of administrative probable cause.[8] *Tri–State Steel Constr., Inc. v. OSHRC,* 26 F.3d 173, 178 (D.C.Cir.1994).[9]

 Finally, National's challenge to the sufficiency of the evidence does not require extended discussion. We review the finding that an employer has violated workplace safety standards to determine whether it is supported by substantial evidence on the record as a whole. *Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 587 (D.C.Cir.1975). National argues that OSHA failed to establish that employees were actually exposed to any of the hazards for which it was cited inasmuch as the likelihood of injury in each was negligible. The ALJ's report, however, contains substantial evidence to support each of the violations. JA 192–200. Moreover, we note that even "thin" evidence is sufficient to support a determination of liability on the record as a whole,

*Astra Pharmaceutical Prods., Inc. v. OSHRC,* 681 F.2d 69, 74 (1st Cir.1982), especially in light of National's failure to present evidence in rebuttal.

For the foregoing reasons, the petition for review is

*Denied.*

---

8. National also argues that OSHA violated its *ex parte* warrant regulation, 29 C.F.R. § 1903.4, because of the same "misrepresentation." The regulation provides in relevant part:

> Compulsory process shall be sought in advance of an attempted inspection or investigation if, in the judgment of the Area Director and the Regional Solicitor, circumstances exist which make such preinspection process desirable or necessary. Some examples of circumstances in which it may be desirable or necessary to seek compulsory process in advance of an attempt to inspect or investigate include (but are not limited to):
> (1) When the employer's past practice either implicitly or explicitly puts the Secretary on notice that a warrantless inspection will not be allowed....

According to National, OSHA's application for a warrant when National did not have a practice of refusing warrantless inspection violated the regulation and infringed its fourth amendment right. The argument fails for two reasons. First, the regulation grants OSHA officials discretion to determine when to seek a warrant and that authority is expressly "not limited" to the examples enumerated. Second, the Supreme

Court recognized in *Marshall* that the warrant process acts to curb a violation of fourth amendment rights arising from "almost unbridled discretion upon executive officers ... as to when to search and whom to search." 436 U.S. at 323, 98 S.Ct. at 1825.

9. OSHA urges us to follow *Tri–State Steel,* involving another National construction project, to conclude that National had no reasonable expectation of privacy at the Cleves site. There we examined National's expectation of privacy in the context of a *warrantless* search of a construction site at which National's contract with the state of Ohio specifically provided for inspection by federal agencies. 26 F.3d at 176–77. Because we conclude that the warrant used to obtain entry here is valid, we need not consider whether the Cleves site contract language, which differs from that involved in *Tri–State Steel,* provides a similar right of inspection. JA 132, 136. Moreover, *Tri–State Steel* involved a "completely open" area "fully exposed to the view of the thousands of motorists who passed by the site." 26 F.3d at 178 (Williams, J., concurring). In contrast, the Cleves site was closed to public traffic and completely occupied by National's construction equipment.